William C. Reeves – 183878
MORALES FIERRO & REEVES
2151 Salvio Street, Suite 280
Concord, CA 94520
Telephone: 925/288-1776
Facsimile: 925/288-1856
Email: wreeves@mfrlegal.com

Attorneys for Defendant
Lemonade Insurance Agency, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA WILLIAMS, | Case No.: |
| Plaintiff, | NOTICE OF REMOVAL |
| vs. | |
| LEMONADE INSURANCE AGENCY, LLC, | |
| Defendant. | |

TO THE COURT ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

BE ADVISED THAT Defendant Lemonade Insurance Agency, Inc. ("Defendant"), pursuant to 28 U.S.C. § § 1332 and 1441, hereby removes to this Court the matter Plaintiff Tina Williams ("Plaintiff") filed that was assigned Los Angeles County Superior Court Case No. 21CHCV00454 ("State Court Action").

This Court has jurisdiction over the State Court Action so as to permit for the removal of it to this Court as the parties are diverse, the amount at issue exceeds $75,000, the venue is proper and the instant notice is timely filed.

For purposes of this Court's jurisdiction, the only relevant parties named in the Complaint filed in the State Court Action are the Plaintiff and the Defendant. [1] Complete diversity exists between these parties as:

---

[1] While the Complaint filed in the State Court Action names Doe Defendants, these parties are properly disregarded. 28 U.S.C. § 1441(b)(1).

1

1    • Plaintiff, on information and belief, is an individual residing in

2  California

3    • Defendant is a limited liability company with a single member -

4  Lemonade, Inc.  Lemonade Inc. is a corporation incorporated in Delaware with its

5  principal place of business in New York.

6    Per the Complaint filed in the State Court Action, the amount at issue exceeds

7  $75,000 as Plaintiff alleges that she is entitled to coverage under an insurance policy

8  that Lemonade allegedly issued for a loss valued at $167,885 of which, per Plaintiff,

9  she has only been paid $38,859.

10    This Court is the proper venue as the State Court Action was filed in Los

11  Angeles County Superior Court.

12    Finally, the removal of the State Court Action to this Court is timely as

13  Defendant was served on November 2, 2021 such that the instant Notice is filed with

14  this Court within thirty (30) days of service.

15    Attached hereto are the following relevant documents:

16    • Exhibit 1 - Complaint filed in the State Court Action.

17    • Exhibit 2 - Proof of Service

18    A copy of this Notice will be filed in connection with the State Court Action.

19  Dated: November 17, 2021

20                                         MORALES FIERRO & REEVES

21

22                              By___/s/ William C. Reeves_____
                                         William C. Reeves
23                                       Attorneys for Defendant

24

25

26

27

28

---

NOTICE

Exhibit 1

Electronically FILED by Superior Court of California, County of Los Angeles on 06/14/2021 12:25 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Reyna,Deputy Clerk

Case 2:21-cv-09003-DSF-JPR   Document 1-1   Filed 11/17/21   Page 4 of 142   Page ID #:4

Assigned for all purposes to: Chatsworth Courthouse, Judicial Officer: Stephen Pfahler

**Arash Merpour, Esq. (SBN 314454)**
**Merpour Law, Inc.**
**2006 East Foothill Blvd**
**Pasadena, CA 91107**
**Telephone: (805) 222-6738**
**E-mail: arash@merpourlaw.com**

Attorney for Plaintiff
Tina Williams

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES NORTH VALLEY DISTRICT

| | |
|---|---|
| Tina Williams, an individual,<br><br>    Plaintiff;<br><br>    v.<br><br>Lemonade Insurance Agency, LLC, a New York Limited Liability Company, and Does 1 through 25, inclusive.<br><br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1.  **BREACH OF CONTRACT;**<br>2.  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>[Unlimited Jurisdiction Over $25,000] |

COMES NOW, Plaintiff Tina Williams who hereby files the following Complaint (hereinafter the "Complaint") asserting the following causes of action against the above-named defendants based on the following allegations:

### THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Tina Williams is, and at all times mentioned hereunto was, a resident of the State of the California, Los Angeles County.

2.      On information and belief, Defendant Lemonade Insurance Agency, LLC ("LEMON-ADE") is an insurance company which is authorized to and is doing business in the State of California, Los Angele County.

3.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacity when the same are ascertained. Plaintiff is further informed and believes and thereon alleges that at all relevant times herein mentioned, each defendant whether specifically named or as a doe was the owner, agent, servant, employee, representative, and/or co-conspirator of each of the remaining defendants, and in doing or failing to do the things alleged herein was acting within the course and scope of said agency, service, employment, representation, and/or conspiracy. The negligent, willful, fraudulent, and/or malicious conduct and actions of each defendant, and each of them, combined to cause injury to the Plaintiff.

4.     Plaintiff is informed and believe and thereon allege that each of the defendants, including Does 1 through 20, inclusive, approved, adopted, acquiesced, ratified, and/or agreed to the acts and omissions of each of the remaining defendants as alleged herein. Plaintiff is also informed and believe and thereon allege that each of the defendants, including Does 1 through 20, inclusive, approved, adopted, acquiesced, ratified, and/or agreed to the acts and omissions of each of the remaining defendants as alleged herein.

5.     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the jurisdictional minimum for this Court.

6.     Venue is proper in this Court because the subject property in dispute is within the Court's jurisdictional limits, the acts and omissions complained of herein occurred within the Court's jurisdictional limits.

## FACTUAL SUMMARY

7.     Plaintiff lives at 21444 Peggy Joyce Lane, Santa Clarita, CA 91350 ("Property").

8.     Plaintiff took out a Lemonade Insurance Agency, LLC ("LEMONADE") homeowners policy for her Property, policy number LP57346AC7 ("POLICY"), effective March 1, 2019 through March

1, 2020.  The POLICY is attached as Exhibit A.  The POLICY covered, among other things, her dwelling, other structures, personal property, loss of use.

9.     On June 14, 2019, while the POLICY was in full force, Plaintiff suffered a loss on her property and reported it to Lemonade, claim #LC5268E07.

10.    Plaintiff submitted multiple invoices, estimates, proposals, and other documentation supporting a loss of at least $167,885.60.

11.    LEMONADE failed to investigate all of Plaintiff's submitted damages.

12.    LEMONADE only investigated $53,749 in damages and only paid out $38,859.1 to Plaintiff.

13.    LEMONADE has never provided Plaintiff with an explanation as to why the rest of her claim was denied.

14.    LEMONADE has never provided Plaintiff with a clear understanding, in writing, of which part of her policy covered her claim payout.

15.    Plaintiff's counsel submitted multiple requests to review the entire case file and for an explanation of LEMONADE's payout to Plaintiff.  LEMONADE failed to explain the case to Plaintiff's counsel.

16.    On December 21, 2020, Plaintiff's counsel sent a request for the entire case file (Exhibit B).

17.    On January 13, 2021, having received nothing, Plaintiff's counsel sent a second request for the entire case file.  (Exhibit C).

18.    On March 12, 2021, having received nothing and after LEMONADE directly contacted Plaintiff without her counsel's permission or presence, Plaintiff's counsel sent a third request for the case file.  (Exhibit D).

19.    On April 9, 2021, having received nothing, Plaintiff's counsel sent a fourth request for the case file.  (Exhibit E).  Up to this date, nearly four months after the request  LEMONADE is still refusing

to answer basic questions and provide any information relating to how much money it paid to Plaintiff and what part of her claim was accepted or denied.

20.   On April 12, 2021, after months of delay, LEMONADE finally released a limited number of documents purporting to be the entire case file ("CASE FILE").

21.   On April 12, 2021, after reviewing the CASE FILE, Plaintiff's counsel sent a follow-up letter pointing out a few of the deficiencies and requesting further clarification on basic information such as what the payouts covered.  (EXHIBIT F).

22.   On April 26, 2021, Plaintiff's counsel sent another follow-up letter pointing out a few of the deficiencies and requesting further clarification on basic information such as what the payouts covered.  (EXHIBIT G).

23.   On May 3, 2021, Plaintiff's counsel sent a letter confirming that LEMONADE would be providing no more documents and not answering any of the deficiencies pointed out on the letters dated April 12 & 26, 2021.  (EXHIBIT H).

24.   On May 13, 2021, Plaintiff submitted a notarized Sworn Statement of Loss.  Exhibit I is the letter Plaintiff submitted to Lemonade along with her Sworn Statement of Loss, including estimates for the damages.

25.   On May 18, 2021, LEMONADE suddenly found new documents and provided them with an "explanation" of what LEMONADE's payouts covered.  The majority of which should have been provided with the CASE FILE.  There were no documents relating to a denial letter or explanation as to which part of the policy was used to pay out Plaintiff.  In this letter Lemonade is denying the claim.  The first two pages are attached as Exhibit J.  These first two pages contain the "explanations" of the payout.

26.   In its May 18, 2021 letter, LEMONADE purports to explain $12,638.85 in damages as "Oth Structures Reference bates LEMONADE0000076-000087.

27.   In its May 18, 2021 letter, LEMONADE purports to explain $11,500.00 in damages as "Oth Structures for Mortgage Reference bates LEMONADE000076-000087."

28. LEMONADE's CASE FILE bates LEMONADE00076-00087 is attached as Exhibit K. These references pages do nothing to explain why the money was paid out, what invoices/proposals/estimates supported the payment, and what part of the policy covered the payments. Plaintiff is unable to verify how these payments were calculated based on LEMONADE's explanation.

29. LEMONADE never provided a further explanation of the case.

30. On June 10, 2021, Plaintiff's counsel confirmed that LEMONADE is denying the sworn proof of loss and not providing any more documents. ("Exhibit L").

31. Plaintiff received no additional communications, documents, or explanations from LEMONADE, including not any denial letters, explanations as to what part of Plaintiff's claim covered LEMONADE's payout, and verifiable explanations as to how LEMONADE calculated all of the payouts to Plaintiff, and a copy of all the proposals, estimates, invoices, Plaintiff submitted to LEMONADE.

32. LEMONADE provided no documentation indicating it investigated Plaintiff's entire sworn statement of loss. Many of the documents submitted in Plaintiff's sworn statement of loss were not part of the CASE FILE or any documentation provided by LEMONADE to Plaintiff.

33. LEMONADE purposefully denied Plaintiff her entire case file, her denial letter, any acceptance letter, and explanation as to what part of her policy covered her payout, a thorough review of all her documents, and an investigation into her sworn statement of loss as part of an overall scheme to wrongfully deprive Plaintiff of the benefits under her Policy. LEMONADE willfully continued to refuse multiple attempts by Plaintiff's counsel to obtain a basic understanding of her claim in an effort to run out the statute of limitations related to this claim.

## **FIRST CAUSE OF ACTION**

### **Breach of Written Contract (against all defendants)**

34. Plaintiff realleges the allegations contained in each paragraph above as though fully set forth herein.

35.   Pursuant to the terms of the POLICY, LEMONADE was and is contractually required to pay for the loss sustained by Plaintiff.

36.   LEMONADE has refused and failed to provide Plaintiff with the insurance coverage as expressly required under the Policy and otherwise failed and refused to timely provide Plaintiff with the full and complete benefits to which she is entitled under the Policy.  Accordingly, LEMONADE is in breach of the express and specific terms of the LEMONADE policy.

37.   As a direct a proximate result of LEMONADE's breach of contractual duties, Plaintiff has sustained damages in an amount which shall be established at the time of trial, currently in excess of $25,000.

## SECOND CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing (against all Defendants)**

38.   Plaintiff realleges the allegations contained in each paragraph above as though fully set forth herein.

39.   At all times mentioned herein, LEMONADE was obligated to act in good faith and fair dealing with Plaintiff.  Such obligation is consistent with the implied covenant of good faith and fair dealing implied in any contract and especially in a contract of insurance.

40.   Included within the benefit of the bargain to which Plaintiff is entitled under the POLICY was the peace of mind that LEMONADE would deal fairly, promptly and completely investigate any and all claims for benefits under the POLICY that would make a fair, reasonable, and prompt evaluation of PLAINTIFF's claim and promptly extend fair, reasonable and good faith sett offer to timely resolve the claim.

41.   Another benefit of the bargain to which Plaintiff was entitled was the peace of mind that LEMONADE would not deliberately misapply the facts and/or law in an effort to support its knowing and unfair decision to improperly and unreasonably withhold, delay, and deny Plaintiff's claim.

42.   Another benefit of the bargain to which Plaintiff was entitled was LEMONADE's good faith compliance with its continued and affirmative obligation to make sure that PLAINTIFF would promptly and timely receive the benefits to which she was entitled and that LEMONADE would not engage in conduct designed to wrongfully deprive her of timely receiving the complete benefits to which she was entitled and which LEMONADE knew were due and owing to Plaintiff.

43.   Another benefit of the bargain to which Plaintiff was entitled was the peace of mind that LEMONADE would give at least as much consideration to Plaintiff's interest with respect to their claim for coverage as LEMONADE gave to its own.

44.   LEMONADE has deliberately and unreasonably refused and failed to act in good faith and deal fairy with Plaintiff by:

a)   Failing to act properly, promptly, reasonably, fairly, and adequately in the handling and resolution of Plaintiff's claim for coverage under the Policy;

b)   Improperly and tediously delaying and refusing to make timely payments to Plaintiff under the POLICY, without proper cause and without regard to the facts and circumstances regarding Plainitiff's loss;

c)   Deliberately refusing to timely provide Plaintiff with the full and complete benefits to which she was entitled under the POLICY, without proper cause and without regards to the provision of the POLICY, relevant case law, applicable insurance regulations, and the undisputed facts, even though LEMONADE knew it owed to Plaintiff for her loss;

d)   Refusing to provide reasonable and timely benefits to Plaintiff, and by further refusing to provide reasonable and timely offers of benefits to Plaintiff

e)   Plaintiff believes and thereon alleges that LEMONADE knowingly proceeded to engage in conduct calculated to delay the adjustment and resolution of Plainitff's claims for payments pursuant to the Policy and to fully and fairly evaluate Plaintiff's claims to resolve such claims, thereby knowingly engaging in conduct calculated to lead to the delay and

7

improper denial of benefits LEMONADE knew were due and owing to Plaintiff, thereby causing Plaintiff to experience emotional distress and in order to allow LEMONADE to save money by depriving Plaintiff of the benefits LEMONADE knew should have been paid to Plaintiff;

f) Basing its decision to refuse to timely provide Plaintiff with he full, complete, and timely benefits on LEMONADE's desire to reduce or avoid its obligations owed to Plaintiff;

g) Forcing Plaintiff to proceed with litigation to receive the benefits LEMONADE knew were due and owing;

h) Refusing to give Plainitff's interests as much consideration as LEMONADE's interest;

i) Refusing to review all of the estimates, proposals, invoices, assertions for the loss provided by Plaintiff;

j) Refusing to provide Plaintiff with a denial letter or other type of explanation as to what part of the POLICY paid out her loss, how her loss was calculated, and what documentation supported or denied her loss payout;

k) Engaging in the above and other conduct in contravention of LEMONADE's duties and responsibilities under the California Insurance Code §790.03(h) and the California Fair Claims Practices Regulations, 10 C.C.R. §2695.1 et seq., which such conduct, while it may not give rise to a private cause of action, does substantiate and provide a prima facie showing of a breach of the implied covenant of good faith and fair dealing; and

l) Plaintiff reserves the right to assert additional acts of bad faith as they are discovered.

45.     As a direct legal result of LEMONADE's wrongful conduct, Plaintiff has suffered severe emotional and mental distress and discomfort in an amount not yet fully ascertained.

46.   The conduct of LEMONADE as herein alleged was done with fraud, malice and oppression as defined in California Civil Code §3294, in that said conduct was deliberately intended to annoy, harass, and injure Plaintiff, was despicable and was carried on with willful and conscious disregard for the rights of Plaintiff, and was done with deliberate intent and purpose to cause harm to Plaintiff, thereby subjecting Plaintiff to cruel and unjust hardship.   Plaintiff is informed and believes and thereon alleges that the acts of fraud, malice, and oppression on the part of LEMONADE was on the part of officers, directors, or managers and agents of said company and/or otherwise ratified by LEMONADE.  In addition, while LEMONADE's conduct toward Plaintiff was egregious, PLAINTIFF is informed and believes and thereon alleges that such conduct is keeping with LEMONADE's actions in delaying claims by other parties who are entitled to benefits under LEMONADE's policies who are in a similar situation to Plaintiff.  Therefore, Plaintiff is entitled to recover exemplary damages from LEMONADE, pursuant to California Civil Code §3294, and any other applicable law, in an amount to be shown, according to proof at the time of trial to punish and deter LEMONADE from engaging in continued acts such as exhibited toward Plaintiff to others similarly situated.

## **Prayer for Relief**

WHEREFORE, Plaintiffs prays for judgment against Defendants, and each of them, as follows:

1.   For special, general, economic, emotional distress, incidental and consequential damages, according to proof;

2.   Reasonable attorney fees;

1.   For pre-judgment interest;

2.   For costs of suit herein incurred;

3.   For punitive damages; and

4.   For such other and further relief as the Court may deem just and proper.

DATED: June 14, 2021

MERPOUR LAW, INC.

*Arash Merpour*

BY:
Arash Merpour
Attorney for Plaintiff, Tina Williams

# EXHIBIT A

# You're Amazing.

You're now part of a special group of people, who participate in making history. Together, we'll be able to make insurance an honest, simple and fun experience.

Thanks for joining, we're sure you're gonna love it here :)



© Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St. 3rd floor, New York, NY 10013 | LEM-DEC-01-CA



5 Crosby St., New York, NY 10013

HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER**
LP57346AC7

**POLICY START DATE**
Mar 01, 2019 05:02pm

**POLICY EXPIRES ON**
Mar 01, 2020 11:59pm

**NAME OF INSURED**
Tina Williams

**INSURED PROPERTY ADDRESS**
21444 Peggy Joyce Ln,
Santa Clarita, CA, 91350

**INSURED EMAIL**

| COVERAGE SUMMARY | | |
|---|---|---|
| **COVERAGE** | **MAXIMUM AMOUNT** | **COST** |
| Dwelling | $350,000 | Included |
| Other Structures | $35,000 | Included |
| Personal Property | $175,000 | Included |
| Loss Of Use | $105,000 | Included |
| Personal Liability | $100,000 | Included |
| Medical Payments To Others | $1,000 | Included |
| Changes to Your Policy (See next page) | | $1.67 |
| $1,000 Deductible | | -$30 |
| **Total Premium** | | **$663 ($55.25/mo)** |

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01-CA

| DISCOUNTS | |
|---|---|
| FOR | AMOUNT |
| Dwelling Age | $59 |
| Age Group | $65 |
| Fire Protection<br>Fire Extinguisher<br>Smoke Detectors | $14 |
| Theft Protection<br>Deadbolts<br>Local Burglar Alarm | $14 |

**Total Discount**  **$152.00 (Annual)**

| CHANGES TO YOUR POLICY | | | | |
|---|---|---|---|---|
| DATE | CHANGES | FROM | TO | PREMIUM |
| 02 Mar, 2019 | Extended Reconstruction Cost Added | 0% | 25% | +$1.67/mo |

| IMPORTANT NOTES |
|---|

Dwelling limit: The limit of liability for this structure (Dwelling coverage) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.

Building code upgrade coverage: This policy provides coverage of up to 10% of the Dwelling limit for increased costs in order to comply with building codes as a result of damage associated with a covered loss. You can find details in your policy under Ordinance or Law.

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01-CA

| ADDITIONAL DOCUMENTS ATTACHED TO THIS POLICY |
| --- |
| Extended Reconstruction Cost |
| Disclosure Notice |
| Personal Property Replacement Cost Endorsement |
| Special Provisions |
| Workers Compensation Endorsement |
| Canine Liability Exclusion Endorsement |
| OFAC (Office Of Foreign Assets Control) Notice |
| Anti-Fraud Statement |
| Claim Reporting Rights Disclosure |
| Notice of Designated Additional Person |

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01-CA



HOMEOWNERS POLICY

In witness whereof, Lemonade Insurance Company has caused this policy to be signed by its president and secretary.

Daniel Schreiber
President and CEO

William D. Latza
Secretary

Copyright 2017 by LEMONADE INSURANCE COMPANY (a stock company) | 5 Crosby St., New York, NY 10013 | help@lemonade.com | LEM-DEC-01-CA

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

  **a.** Liability for "bodily injury" or "property damage" arising out of the:

    **(1)** Ownership of such vehicle or craft by an "insured";

    **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

    **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

    **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

    **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

  **b.** For the purpose of this definition:

    **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

    **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

    **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** **"Bodily injury" means** physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

"Bodily injury" does not include:

a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any "insured" to any other person;

b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any "insured" to any other person; or

c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

**3.** "Business" means:

  **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  **b.** Any other activity engaged in for money or other compensation, except the following:

    **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**a.** You and residents of your household who are:

  **(1)** Your relatives; or

  **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

**b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

  **(1)** 24 and your relative; or

  **(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II:**

  **(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

  **(2)** With respect to a "motor vehicle" to which this policy applies:

    **(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.;** or

    **(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

  **a.** The "residence premises";

  **b.** The part of other premises, other structures and grounds used by you as a residence; and

    **(1)** Which is shown in the Declarations; or

    **(2)** Which is acquired by you during the policy period for your use as a residence;

  **c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

  **d.** Any part of a premises:

    **(1)** Not owned by an "insured"; and

    **(2)** Where an "insured" is temporarily residing;

  **e.** Vacant land, other than farm land, owned by or rented to an "insured";

  **f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

  **g.** Individual or family cemetery plots or burial vaults of an "insured"; or

  **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

  **a.** A self-propelled land or amphibious vehicle; or

  **b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

  **a.** "Bodily injury"; or

  **b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

  **a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

  **b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means the dwelling, other structures and land located at the address stated on the Policy Declarations.

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

## SECTION I – PROPERTY COVERAGES

**A. Coverage A – Dwelling**

1. We cover:

   **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

**B. Coverage B – Other Structures**

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   **a.** Land, including land on which the other structures are located;

   **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   **c.** Other structures from which any "business" is conducted; or

   **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

**C. Coverage C – Personal Property**

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Locations**

   **a. Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   **(1)** Moved from the "residence premises" because it is:

   **(a)** Being repaired, renovated or rebuilt; and

   **(b)** Not fit to live in or store property in; or

   **(2)** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

   **b. Self-storage Facilities**

   Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   **(1)** Moved from the "residence premises" because it is:

   **(a)** Being repaired, renovated or rebuilt; and

   **(b)** Not fit to live in or store property in; or

   **(2)** Usually located in an "insured's" residence, other than the "residence premises".

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

   **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**j.** $1,500 on portable electronic equipment that:

**(1)** Reproduces, receives or transmits audio, visual or data signals;

**(2)** Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

**(3)** Is in or upon a "motor vehicle".

**k.** $250 for antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** – Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment.

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover under Coverage A - Dwelling, Coverage B - Other Structures or Coverage C - Personal Property makes your "residence premises" uninhabitable.

However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I – Perils Insured Against, A. 2. c. (5)(a) & (b).

Payment for additional living expense as a result of a covered loss under Coverage A - Dwelling, Coverage B - Other Structures or Coverage C - Personal Property will be limited to the least of the following:

**a)** the time period required to repair or replace the property we cover, using due diligence and dispatch;

**b)** if you permanently relocate, the shortest time for your household to settle elsewhere; or

**c)** 12 months.

These periods of time are not limited by the termination of this policy.

In no event shall our payment for additional living expenses exceed the Limit Of Liability shown on your Policy Declarations for Additional Living Expense.

We do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the "residence premises" rented or held for rental is uninhabitable.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

However, payments for additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I – Perils Insured Against, A. 2. c. (5)(a) & (b).
The two-week period of time referenced above is not limited by the termination of this policy.

No deductible applies to this protection.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

## E. Additional Coverages

### 1. Debris Removal

**a.** We will pay your reasonable expense for the removal of:

**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C**;

provided the trees:

**(3)** Damage a covered structure; or

**(4)** Do not damage a covered structure, but:

**(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I** – Conditions.

### 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

### 4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

**(1)** A building or any part of a building that is in danger of falling down or caving in;

**(2)** A part of a building that is standing, even if it has separated from another part of the building; or

**(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C;**

**(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**11. Ordinance Or Law**

   **a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

     **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

     **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

     **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

   **c.** We do not cover:

     **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

     **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

     Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This coverage is additional insurance.

**12. Grave Markers**

   We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

   This coverage does not increase the limits of liability that apply to the damaged covered property.

**13. Power Interruption**

   We will pay up to $500 for loss to the contents of freezers and refrigerated units on the "residence premises" caused by the interruption of power which occurs off the residence premises. If a power interruption is known to an insured person, all reasonable means must be used to protect the contents of freezers and refrigerated units.

   This coverage does not increase the limit of liability applying to the damaged property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

   **1.** We insure against direct physical loss to property described in Coverages **A** and **B.**

   **2.** We do not insure, however, for loss:

     **a.** Excluded under Section **I** – Exclusions;

     **b.** Involving collapse, including any of the following conditions of property or any part of the property:

       **(1)** An abrupt falling down or caving in;

       **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

       **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

     except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

     **c.** Caused by:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

  **(a)** Maintain heat in the building; or

  **(b)** Shut off the water supply and drain all systems and appliances of water.

  However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

  For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

  **(a)** Fence, pavement, patio or swimming pool;

  **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

  **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

  **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

  **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

  **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

  For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

  **(a)** Wear and tear, marring, deterioration;

  **(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

  **(c)** Smog, rust or other corrosion, or dry rot;

  **(d)** Smoke from agricultural smudging or industrial operations;

  **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

  **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

  **(g)** Birds, rodents or insects;

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

### Exception To c.(6)

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

### B. Coverage C – Personal Property

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

1. **Fire Or Lightning**

2. **Windstorm Or Hail**

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

   This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

7. **Smoke**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**

   **a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   **b.** This peril does not include loss caused by theft:

   **(1)** Committed by an "insured";

   **(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   **(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

   **(4)** That occurs off the "residence premises" of:

   **(a)** Trailers, semitrailers and campers;

   **(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**b.** This peril does not include loss:

**(1)** To the system or appliance from which the water or steam escaped;

**(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

**(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section I – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I – EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting.

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

**3. Water**

This means:

**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

**(1)** Backs up through sewers or drains; or

**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

**a.** Make reasonable and necessary repairs to protect the property; and

**b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

**a.** Show the damaged property;

**b.** Provide us with records and documents we request and permit us to make copies; and

**c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**a.** The time and cause of loss;

**b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

**c.** Other insurance which may cover the loss;

**d.** Changes in title or occupancy of the property during the term of the policy;

**e.** Specifications of damaged buildings and detailed repair estimates;

**f.** The inventory of damaged personal property described in **6.** above;

**g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

**h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

**D. Loss Settlement**

In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

**1.** Property of the following types:

    **a.** Personal property;

    **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

    **c.** Structures that are not buildings; and

    **d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

    **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

        **(1)** The limit of liability under this policy that applies to the building;

        **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

        **(3)** The necessary amount actually spent to repair or replace the damaged building.

    If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

    **b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

        **(1)** The actual cash value of that part of the building damaged; or

        **(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

    **c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

        **(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

        **(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

        **(3)** Underground flues, pipes, wiring and drains.

    **d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

    However, if the cost to repair or replace the damage is both:

        **(1)** Less than 5% of the amount of insurance in this policy on the building; and

        **(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

### E. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

### F. Appraisal

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

### G. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

### H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

### I. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### J. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

### K. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### L. Mortgage Clause

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**S. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

**SECTION II – EXCLUSIONS**

**A. "Motor Vehicle Liability"**

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service a residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place:

**(a)** On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

**(b)** Off an "insured location" and the "motor vehicle" is:

**(i)** Designed as a toy vehicle for use by children under seven years of age;

**(ii)** Powered by one or more batteries; and

**(iii)** Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

**a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

**b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

**(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

**(2)** Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   **a.** Workers' compensation law;

   **b.** Non-occupational disability law; or

   **c.** Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   **a.** Is also an insured under a nuclear energy liability policy issued by the:

   **(1)** Nuclear Energy Liability Insurance Association;

   **(2)** Mutual Atomic Energy Liability Underwriters;

   **(3)** Nuclear Insurance Association of Canada;

   or any of their successors; or

   **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured" to:

   **a.** Repay; or

   **b.** Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   **a.** Occurs off the "insured location"; and

   **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   **a.** Workers' compensation law;

   **b.** Non-occupational disability law; or

   **c.** Occupational disease law;

3. From any:

   **a.** Nuclear reaction;

   **b.** Nuclear radiation; or

   **c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

   **d.** Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   **a.** To the extent of any amount recoverable under Section **I;**

   **b.** Caused intentionally by an "insured" who is 13 years of age or older;

   **c.** To property owned by an "insured";

   **d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   **e.** Arising out of:

   **(1)** A "business" engaged in by an "insured";

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

### D. Loss Assessment

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II** – Exclusions; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section **II** – Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and the "named insured" shown in the Declarations;

**b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

**c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

**a.** To make settlement;

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

**b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II**.

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

  **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

  **b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

  **c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   **(2)** If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

  **d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

  **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

  **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Contains material from the © Insurance Services Office, Inc., 2010, used with permission.

# EXHIBIT B

Merpour Law, Inc.
_____

Arash Merpour, Esq.                    2006 East Foothill Blvd
                                       Pasadena, CA 91107
                                       (805) 222-6738

December 21, 2020

**<u>EMAIL ONLY</u>**

Lemonade
Benjamin Endres
Ben.endres@lemonade.com

**<u>Re:     Williams, Tina – LC5268E0C7  –  Case File Request</u>**

Dear Ms. Endres,

     My office has been retained by Ms. Tina Williams, Policy #LP57346AC7, Claim #LC5268E0C7.  Attached is my statement of representation.

     Please forward me a copy of the insurance policy and the case file for the above claim. An electronic copy is ok.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

# EXHIBIT C

Merpour Law, Inc.
_____

Arash Merpour, Esq.

2006 East Foothill Blvd
Pasadena, CA 91107
(805) 222 - 6738

January 13, 2021

**<u>EMAIL ONLY</u>**

Lemonade
Benjamin Endres
Ben.endres@lemonade.com

**<u>Re:     Williams, Tina – LC5268E0C7  –  Case File Request #2</u>**

Dear Ms. Endres,

     This is my second request to view the case file and to confirm that you are not providing us with *any* documents related to the case, except for the insurance policy.  I am starting to sound like a broken record, but you are legally required to provide the case file upon request.  As I am sure you are aware, my Client is disabled and struggles to maintain any correspondences you may have previously submitted.  Her disability aside, she has a right to request a complete explanation as to all the reasons you accepted or denied her claim. Your email on January 13, 2021, indicated you will only provide the case file upon a subpoena.  I am surprised Lemonade has a policy of forcing the insured to sue them in order to review their case.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

# EXHIBIT D

Merpour Law, Inc.
_____

Arash Merpour, Esq.

2006 East Foothill Blvd
Pasadena, CA 91107
(805) 222 - 6738

March 12, 2021

**<u>EMAIL ONLY</u>**

Lemonade
Benjamin Endres
Ben.endres@lemonade.com

**<u>Re:     Williams, Tina – LC5268E0C7  –  Unauthorized Contact & Case File Request #3</u>**

Dear Ms. Endres,

I don't know what is going on with you, and your company policies, but let me refresh your memory of the law.  To date, your company has refused to provide *any* documents relating to the above referenced claim.   You keep on telling me that legal will reach out, but they never do.  That's fine, you can keep on following company policy and not provide me with any documents.

Now I hear that you are texting my Client stating that the claim is being reopned.  You *cannot* contact my Client while she is being represented.  I already told you to direct all communications with me, and now you are trying to speak with her behind my back.  I demand that you inform us what is going on with the case, and why it is being reopened.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

# EXHIBIT E

**Merpour Law, Inc.**
_____

Arash Merpour, Esq.

2006 East Foothill Blvd
Pasadena, CA 91107
(805) 222 - 6738

April 9, 2021

**<u>EMAIL ONLY</u>**

Katherine T. Botros
Resnick & Louis, P.C.
Kbottros@rlattorneys.com

**<u>Re:</u>      Williams, Tina – LC5268E0C7  – Case File Request #4**

Dear Ms. Botros,

     Your letter I received today indicated I would receive a dropbox link.  I have received no such link.  Since you still have not provided me with anything, how about you answer *basic* questions about the claim.

   1)  How much money did you pay to my Client, and what did it cover?
   2)  What parts of my Client's claim did you deny, and why?

     Please don't continue to waste me time by referencing the case file that you are not providing.  You are a representative of the insurance company and should be able to succinctly state how much money my Client received, , which part of the claim was denied, and why.

     In my previous letter, I clearly asked why my Client was contacted, why the case is being reopened, and the current status of the case? Your only response was to state that you have asked the adjuster to refrain from contacting my Client – an unhelpful response.  **I am asking you again, why was my Client contacted, why is the claim being reopened, and what is the current status of the claim?**  If you continue to fail to answer these simple, straightforward questions about the status of this claim then I will assume that you do not know why my Client was contacted, you do not know why it was reopened, and you do not know what the current status of the case.  Since you are the attorney representing this claim, I will assume that if you do not know the current status of the claim, then it has been subsequently closed after you contacted my Client stating it was reopened.

     Kindly let me know if my understanding of your client's current position of this claim is incorrect, and answer the above questions regarding payment, by April 16, 2020.  In addition, kindly provide the terms of any subrogation agreement between our clients.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

# EXHIBIT F

**Merpour Law, Inc.**

Arash Merpour, Esq.

2006 East Foothill Blvd
Pasadena, CA 91107
(805) 222 - 6738

April 12, 2021

**<u>EMAIL ONLY</u>**

Katherine T. Botros
Resnick & Louis, P.C.
Kbottros@rlattorneys.com

**Re:     <u>Williams, Tina – LC5268E0C7  – Case File Request #5 & Bad Faith Assertion</u>**

Dear Ms. Botros,

    This will be my last attempt to obtain the complete case file from you before filing suit for a bad-faith lawsuit.  I have been requesting this file for over four months, and you provide me with an incomplete case file.

    This only contains generic one-line summaries of the amount paid with no real explanation of how you reached the final amount.  In particular, the documents used to payout the items in PDF pages 29 – 31, and the attachments referenced in pdf pages 32 – 25 are not provided.   An insured would never be able to understand how you paid out the claim with the information you belatedly provided.  If you are going to claim that all of this is privileged, then say so, and we will seek it during discovery.  You did not even provide the denial letters or summary payout letters that generally accompany every claim.

    You still have not explained why your adjuster recently contacted my client, why your insurance company stated the claim was being reopened, and what is the current status of the claim.  Can you at least tell me if this claim is open or closed?

    I'm not interested in waiting another four months for you to provide basic claim information.  If we do not receive a detailed breakdown of the amount you paid, why it was paid, and the documents supporting the payment by April 16, 2021, then I will assume you have no more information to provide, and I will take appropriate action.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

# EXHIBIT G

**Merpour Law, Inc.**

Arash Merpour, Esq.

2006 East Foothill Blvd
Pasadena, CA 91107
(805) 222 - 6738

April 26, 2021

**EMAIL ONLY**

Katherine T. Botros
Resnick & Louis, P.C.
Kbottros@rlattorneys.com

**Re:     Williams, Tina – LC5268E0C7  – Case File Request #6**

Dear Ms. Botros,

The claim file is incomplete.  There are number of payouts listed with no explanation.  It would be helpful if you clarify the following based on Lemonade00081-2 :

1. Is the total amount you paid to my Client $38,061.38?
2. What did the $6,300 for the "pool equip" include"?  There is no invoice or estimate for this item.
3. What did the $5,561.15 for the "block wall estimate" include?  There is no invoice or estimate for this item.
4. What does the $12,638.85 for the "Policy Limit Payment up to $25K" include?  There is no invoice or estimate for this item.
5. What does the $11,500 for the "Policy Limits w Mortgage Co." include?  There is no invoice or estimate for this item.
6. What does $246.5 for G4S include?  There is no invoice or estimate for this item.
7. What does $617 for G4S include?  There is no invoice or estimate for this item.
8. What does $697.88 for RYZE include?  There is no invoice or estimate for this item.
9. Pages Lemonade00132 & Lemonade00143 are unclear.  With respect to these two pages, who is the vendor and how much did you pay out?

Where are all of the letters you sent to my Client explaining the above payouts? Where are the claim denial letters for the unpaid amount listed on Lemonade00081?

We have the right to understand why you paid/didn't pay each claim.  Please provide a response by April 30, 2021.  I trust, since you already reviewed the file for privilege, that it will not take the entire week to respond.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

# EXHIBIT H

Merpour Law, Inc.
_____

Arash Merpour, Esq.

2006 East Foothill Blvd
Pasadena, CA 91107
(805) 222 - 6738

May 3, 2021

**EMAIL ONLY**

Katherine T. Botros
Resnick & Louis, P.C.
Kbottros@rlattorneys.com

**Re:    Williams, Tina – LC5268E0C7  – Case File Request #7**

Dear Ms. Botros,

    This letter is to confirm that you will not be providing us with any further documents relating to this case.  It will also confirm that you will not be answering any of the questions I raised in my letter to you dated April 26, 2021.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

# EXHIBIT I

Merpour Law, Inc.
_____

Arash Merpour, Esq.

2006 East Foothill Blvd
Pasadena, CA 91107
(805) 222 - 6738

May 13, 2021

**EMAIL ONLY**
Katherine T. Botros
Resnick & Louis, P.C.
Kbottros@rlattorneys.com

**Re:      Williams, Tina – LC5268E0C7  – Sworn Statement of Loss & Insurance Code §2071**

Dear Ms. Botros,

   Attached is our sworn proof of loss.  Per the policy, you have sixty days to respond to the sworn proof of loss.  However, the policy also stipulates that any lawsuit must be brought against you within two years after the date of loss.  We ask for an extension of this provision barring any lawsuit against you after two years from the date of loss to Wednesday July 14, 2021, in order to provide you an adequate amount of time to respond to the sworn proof of loss.  We will assume you are not granting us the requested extension unless we receive confirmation in writing.

   This letter will also confirm, despite my five months long request for compliance, you have failed to comply with Insurance Code §2071 by continuing to delay the delivery and explanation of the following:

1. All payments made on the loss, including a statement of loss and the associated check number:
2. All loss adjustment calculations as to the amount of loss and depreciation:
3. All reports, this includes cause and origin reports, Independent adjuster reports, other vendor reports, witness interviews, governmental agency reports, and private investigation reports:
4. All invoices and proposals the insured submitted, along with an explanation as to why it was accepted or denied:
5. Any inspection report or photographs of the property prior to the loss from the underwriting file.

   It's my understanding that you have not provided these documents, nor will you provide it within fourteen days.  If this incorrect, then kindly point out where I can find it in the "case file" you provided.  These are all reasonable requests to insure a full, fair, and reasonable investigation and prompt payment of the claim in accordance with the California Fair Claims Settlement Regulations.

Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

| POLICY NUMBER | **Sworn Statement** | COMPANY CLAIM NUMBER |
|---|---|---|
| LP57346AC7 | | LP57346AC7 |
| POLICY AMT. AT TIME OF LOSS | IN | AGENT |
| $ 766,000 | | Benjamin Endres |
| DATE ISSUED | **PROOF OF LOSS** | AGENCY AT |
| 3/1/2019 | | Lemonade Insurance Company |
| DATE EXPIRES | | |
| 3/1/2020 | | |

To the _Lemonade Insurance Company_

of _New York, NY_
At time of loss, by the above indicated policy of insurance you insured-

_Tina Williams at 21444 Peggy Joyce Ln, Santa Clarita, CA 91350_

against loss by _damage_ to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

**TIME AND ORIGIN**
A _property_ loss occurred about the hour of _2:21_ o'clock AM/ on the _14_ day of _June_, 20 _19_
The cause and origin of the said loss were: _neighbors fence collapsed into property._

**OCCUPANCY**
The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: _insured and tenants_

**TITLE AND CHANGES**
At the time of the loss, the interest of your insured in the property described therein was _complete 100%_ INTEREST
. No other person or persons had any interest therein or encumbrance thereon, except:
Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except

**TOTAL**
THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss,
$ _766,000_, as more particularly specified in the apportionment attached, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

**VALUE**
THE ACTUAL CASH VALUE of said property at the time of the loss was . . . . . . . . . . . . $ _556,500_

**LOSS**
THE WHOLE LOSS AND DAMAGE was . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _167,885.60_

**AMT. CLAIMED**
THE AMOUNT CLAIMED under the above numbered policy number is . . . . . . . . . . . . . . .$ _167,885.60_

**STATEMENTS OF INSURED**
The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

I incorporate all documents I provided to Lemonade since the inception of this claim into this sworn proof of loss.

_5/13/21_
Date

Tina Williams

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.



# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Los Angeles _____

On ___May 13, 2021_____ before me, __Jennifer VanStone, notary public__
                                            (insert name and title of the officer)

personally appeared ___TINA WILLIAMS_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)

JENNIFER VAN STONE
Notary Public - California
Los Angeles County
Commission # 2326908
My Comm. Expires May 19, 2024



POLICY NUMBER

LP57346AC7

POLICY AMT. AT TIME OF LOSS

$ 766,000

DATE ISSUED

3/1/2019

DATE EXPIRES

3/1/2020

# Sworn Statement

## IN

# PROOF OF LOSS

COMPANY CLAIM NUMBER

LP57346AC7

AGENT

Benjamin Endres

AGENCY AT

Lemonade Insurance Company

To the   Lemonade Insurance Company

of         New York, NY

At time of loss, by the above indicated policy of insurance you insured-

Tina Williams at 21444 Peggy Joyce Ln, Santa Clarita, CA 91350

against loss by     damage              to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

TIME AND
ORIGIN

A     property        loss occurred about the hour of   2:21 o'clock AM/ on the   14      day of    June      , 20 19
The cause and origin of the said loss were:    neighbors fence collapsed into property.

OCCUPANCY

The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever:    insured and tenants                                                            .

TITLE AND
CHANGES

At the time of the loss, the interest of your insured in the property described therein was  complete 100%            INTEREST
_____ .   No other person or persons had any interest therein or encumbrance thereon, except:
Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy,  possession, location or exposure of the property described, except

TOTAL

THE TOTAL AMOUNT OF INSURANCE  upon the property described by this policy was, at the   time of the loss,
$    766,000                    , as more particularly specified in the apportionment attached, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

VALUE

THE ACTUAL CASH VALUE of said property at the time of the loss was . . . . . . . . . . . $      556,500

LOSS

THE WHOLE LOSS AND DAMAGE was . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $      167,885.60

AMT. CLAIMED

THE AMOUNT CLAIMED under the above numbered policy number is. . . . . . . . . . . . . . .. $     167,885.60

STATEMENTS
OF INSURED

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void;  no articles are mentioned herein or in annexed  schedules but such as were destroyed or damaged at the time of said loss;  no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said    loss,  has  in  any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

I incorporate all documents I provided to Lemonade since the inception of this claim into this sworn proof of loss.

_____
Date

_____
Tina Williams

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

# QUOTE

## Santa Clarita Handyman

*Service Is Our Business*

32258 Indiana Avenue
Acton, California 93510

INVOICE # 1888
DATE: 06/18/2019

**EXPIRATION DATE DATE**

TO   Tina Williams
21444 Peggy Joyce Lane
Santa Clarita, California 91350

| SALESPERSON | JOB | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
| Shawn | Disposal of Concrete | Due on receipt | |

| QTY | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| | Disposal of concrete block | | 1000.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Note: Cash only special price | | |

| | |
|---|---|
| SUBTOTAL | 1000.00 |
| SALES TAX | |
| TOTAL | 1000.00 |

**THANK YOU FOR YOUR BUSINESS!**



# i Construction

**"Building Your Vision"**
24752 Newhall Ave
Newhall CA 91321
Telephone: (661) 510 - 8554

Landscape and Hardscape Proposal
For the residence of:

**Ms. Tina Williams**
**21444 Peggy Joyce Lane**
**Saugus, CA 91350**
Email: Badassshoestore@gmail.com
Phone: (661) 312-1270
October 15, 2019.

## Landscape and Hardscape Services

i Construction, ("landscaper") proposes to provide **Ms. Tina Williams**. ("Client") with equipment and labor to complete the scope of services outlined below. Once the proposal is accepted any changes requested by the Client will require a change order signed by both parties before any work can be initiated.

| SCOPE OF SERVICES | COST |
|---|---|
| **1.Waterfall:** Contractor will pour concrete foundation and install Waterfall on rear side of residence, homeowner to provide all material necessary. | $7,000.00 |
| **TOTAL PROJECT COST** | $7,000.00 |

**COSTS:**
Cost for the project will be Seven Thousand Dollars ($7,000.00). A deposit in the amount of two hundred ($200.00) is due at the time the proposal is accepted and signed by both parties. This deposit will be credited to our final billing. The remaining portion of the fee, ($6,800.00), is due and payable as scheduled.

Payment Schedule:

| Completion | Payment Due |
|---|---|
| Pour Concrete foundation | (1) $2,000.00 |
| Install Waterfall | (2) $4,000.00 |
| Final Walk-Through | (3) $800.00 |

Final project amount is due and payable upon completion of the project and final walk through. Landscaper reserves the right to cease all work and remove all equipment, material and labor from job site in the event interim payments are not received when due. Interest will accrue at the rate of one-half percent (1 1/2%) per month on any past due invoices.

### Other Terms & Conditions

If client's payments to landscaper are not made on a timely basis, landscaper reserves the right to not provide additional services until all payments are current in accordance with the payment schedule of this proposal letter.

This agreement may be modified only in writing with the consent of all parties. Any dispute or claim arising out of this agreement shall be decided by binding arbitration in accordance with the rules of the American arbitration association and not by court action except as provided by California law for judicial review of arbitration proceedings.

Any court having jurisdiction may enter judgment upon the award rendered by the arbitrator(s). The parties shall have the right of discovery in accordance with California code of civil procedure, section 1283.05.

If either party should bring arbitration against the other arising out of this agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs

Either party for any reason with a minimum of two (2) weeks prior written notice, providing the project has not been started may cancel this agreement.

In the event this agreement is cancelled client agrees to reimburse landscaper for time and materials up to and including the last day of the project, upon presentations of a final billing.

It is anticipated that the work outlined above can be completed in a period not-to-exceed ten (10) days of on-site work, excluding weekends. Saturday work will be done only upon agreement of both parties.

Landscape shall not be responsible for delays due to acts of nature, including rain, flooding, earthquake, etc. or inaccessibility to property beyond landscapers control.

The project would be tentatively scheduled to begin on _____ 2019. A firm date will be decided one both parties have signed this agreement. Landscaper reserves the right to withdraw this proposal if not accepted within 10 days of date of presentation.

Acceptance of proposal: the above prices, specifications, and condition are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Please sign, date and return a copy of this agreement to this office with your retainer payment.

**i Construction**                                      **Ms. Tina Williams**

By: _____                    By: _____

    Ivan Lopez                                      Date: _____, 2019

# INVOICE

Page 1 of 2

## WASTE MANAGEMENT

To view your Insert
Click the link below:
**INSERT1**

| Customer ID: | 8-36598-25001 |
|---|---|
| Customer Name: | TINA WILLIAMS |
| Service Period: | 07/01/19-09/30/19 |
| Invoice Date: | 07/01/2019 |
| Invoice Number: | 5483982-0160-6 |

| How To Contact Us | Your Payment Is Due | Your Total Due |
|---|---|---|
| **Visit wm.com**<br><br>To setup your online profile, sign up for paperless statements, manage your account, view holiday schedules, pay your invoice or schedule a pickup<br><br>  <br><br>Customer Service:<br>**(661) 259-2398** | **Due Upon Receipt**<br><br>If full payment of the invoiced amount is not received within your contractual terms, you may be charged a monthly late charge of 2.5% of the unpaid amount, with a minimum monthly charge of $5, or such late charge allowed under applicable law, regulation or contract. | **$127.90**<br><br><br><br>See Reverse for Important Messages |

| Previous Balance | | Payments | | Adjustments | | Current Charges | | Total Due |
|---|---|---|---|---|---|---|---|---|
| 72.04 | + | 0.00 | + | 0.00 | + | 55.86 | = | **127.90** |

**Details for Service Location:**                       Customer ID:    8-36598-25001
**Williams, Tina, 21444 Peggy Joyce Ln, Santa Clarita CA 91350-1723**

| Description | Date | Ticket | Quantity | Amount |
|---|---|---|---|---|
| 96 Gallon toter recycle | 07/01/19 | | 1.00 | 0.00 |
| 96 Gallon cart service – green waste | 07/01/19 | | 1.00 | 0.00 |
| 96 Gallon toter | 07/01/19 | | 1.00 | 55.86 |
| **Total Current Charges** | | | | **55.86** |

✂ - - - - - - - - - - - - - - - - - *Please detach and send the lower portion with payment - - - (no cash or staples)* - - - - - - - - - - - - - - - - - - - - - -



WASTE MANAGEMENT
BLUE BARREL DISPOSAL
PO BOX 43530
PHOENIX, AZ 85080
(661) 259-2398
(818) 367-5828
 (661) 274-4289 FAX

| Invoice Date | Invoice Number | Customer ID<br>(Include with your payment) |
|---|---|---|
| 07/01/2019 | 5483982-0160-6 | **8-36598-25001** |
| **Payment Terms** | **Total  Due** | **Amount** |
| Due Upon Receipt | $127.90 | |

016000008365982500105483982000000558600000012790  7

I0156R90

TINA WILLIAMS
21444 PEGGY JOYCE LN
SANTA CLARITA CA 91350-1723

WASTE MANAGEMENT – BLUE BARREL
PO BOX 541008
LOS ANGELES, CA 90054-1008

 **THINK GREEN.**

 Printed on recycled paper.

f6O-0108281-0160-9

## IMPORTANT MESSAGES

**This invoice constitutes an offer by WM to provide service to you for a specified period. By paying this, you agree to continue service during the specified service period, with no refund (whole or partial) for early cancellation, unless such refund is required by law, regulation or contract. If you cancel services, you will be assessed a Cart Removal charge of up to $75.**

Your enclosed invoice contains an increase to your service rate (next invoice for some customers billed in arrears). This price increase is in accordance with your applicable service terms, whether franchise, government regulated, subscription or individual service agreement. For residential subscription customers, our service rate may change from billing period to billing period, at our discretion. Contact us if you have any questions.

ATTN SANTA CLARITA RESIDENTS: Disregard other late fee/due date language on bill. If payment isn't received within 15 days from end of service period, a 1.5% late fee will be charged. A resume fee may be charged to restart suspended service.

### 5 EASY WAYS TO PAY

**Automatic Payment**
Set up recurring payments with us at wm.com/myaccount.

**Pay Through Your Financial Institution**
Make a payment from your financial institution using your Customer ID.

**One-Time Payment**
At your desk or on the go, use wm.com or our WM mobile app for a quick and easy payment.

**Pay by Phone**
Payable 24/7 using our automated system at 866-964-2729.

**Mail it**
Write it, stuff it, stamp it, mail it. Envelope provided.

### HOW TO READ YOUR INVOICE



States the date payment is due to Waste Management. Anything beyond that date may incur additional charges. Your **Total Due** is the total amount of current charges and any previous unpaid balances combined.

Previous balance is the total due from your previous invoice. We subtract any **Payments Received/Adjustments** and add your **Current Charges** from this billing cycle to get a **Total Due** on this invoice. If you have not paid all or a portion of your previous balance, please pay the entire **Total Due** to avoid a late charge or service interruption.

Service location details the total current charges of this invoice.

## A NEW WM.COM DESIGNED AROUND YOU

- **Check your pickup status** or holiday schedule so you never miss a pickup
- **More ways to pay** and convenient AutoPay and Paperless options
- **View your invoice** anytime, anywhere and on any device

Learn more at wm.com

If your service is suspended for non-payment, you may be charged a Resume charge to restart your service. For each returned check, a charge will be assessed on your next invoice equal to the maximum amount permitted by applicable state law.

### ☐ CHECK HERE TO CHANGE CONTACT INFO

List your new billing information below. For a change of service address, please contact Waste Management.

| | |
|---|---|
| Address 1 | |
| Address 2 | |
| City | |
| State | |
| Zip | |
| Email | |
| Date Valid | |

### ☐ CHECK HERE TO SIGN UP FOR AUTOMATIC PAYMENT ENROLLMENT

If I enroll in Automatic Payment services, I authorize Waste Management to pay my invoice by electronically deducting money from my bank account. I can cancel authorization by notifying Waste Management at wm.com or by calling the customer service number listed on my invoice. Your enrollment could take 1–2 billing cycles for Automatic Payments to take effect. Continue to submit payment until page one of your invoice reflects that your payment will be deducted.

| | |
|---|---|
| Email Address | |
| Date | |
| Bank Account Holder Signature | |

**NOTICE:** By sending your check, you are authorizing the Company to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on your check. The electronic debit will be for the amount of your check and may occur as soon as the same day we receive your check.

In order for us to service your account or to collect any amounts you may owe (for non-marketing or solicitation purposes), we may contact you by telephone at any telephone number that you provided in connection with your account, including wireless telephone numbers, which could result in charges to you. Methods of contact may include text messages and using pre-recorded/artificial voice messages and/or use of an automatic dialing device, as applicable. We may also contact you by email or other methods as provided in our contract.

Please send all bankruptcy correspondence to PO Box 43290, Phoenix, AZ 85080 (this language is in compliance with 11 USC 342(c)(2) of the Bankruptcy Code)

# INVOICE

**Sigma Pool Service**
P.O. Box 800025
Santa Clarita, CA 91380
sigmapoolservice@gmail.com

**POOL SERVICE**
Equipment Repairs and Installations

| Date | Invoice No. |
|------|-------------|
| 7/19/19 | 720192 |
| Terms | Due Date |
| Due on receipt | 7/19/19 |

| Bill To |
|---------|
| **Tina Williams** |
| 21444 Peggy Joyce Ln |
| Saugus, CA 91350 |
| twilliams62@live.com |

| Amount Due | Enclosed |
|------------|----------|
| 0.00 | |

| Item | Description | Amount |
|------|-------------|--------|
| Service | July 2019 pool maintenance (2 weeks service) | $62.50 |
| Payment | Payment received | -$62.50 |
| | **Total** | $0.00 |

Thank you for your business!

# INVOICE



**Sigma Pool Service**
P.O. Box 800025
Santa Clarita, CA 91380
sigmapoolservice@gmail.com

| Date | Invoice No. |
|------|-------------|
| 7/20/2019 | 0122 |
| Terms | Due Date |
| Due on receipt | 7/20/2019 |

**Bill To**

Tina Williams
21444 Peggy Joyce Ln
Saugus , CA 91350
twilliams62@live.com

| Amount Due | Enclosed |
|------------|----------|
| 0.00 | |

| Item | Description | Amount |
|------|-------------|--------|
| Service | Pool & Spa drain/fill: remove dirt, clean filter, clean baskets, balance water chemistry | $600.00 |
| Installation | Pool & Spa main drain covers replacement | $90.00 |
| Parts | Filter grids | $60.00 |
| Parts | Filter tank o-ring | $20.00 |
| Repair | Pool and spa lights electrical wiring | $150.00 |
| Payment | Payment received | -$920.00 |
| | **Total** | **$0.00** |

**Thank you for your business!**



## Final Details for Order #113-3305529-3051410
Print this page for your records.

**Order Placed:** July 10, 2019
**Amazon.com order number:** 113-3305529-3051410
**Order Total: $38.27**

| Shipped on July 10, 2019 |
|---|

| **Items Ordered** | **Price** |
|---|---|
| 1 of: *Pool Patch PTSRKW3 White Pool Tile Setting Repair Kit, 3-Pound* | $34.95 |
| Sold by: Amazon.com Services, Inc | |
| Condition: New | |

**Shipping Address:**

Tina Williams
21444 PEGGY JOYCE LN
SANTA CLARITA, CALIFORNIA
91350-1723
United States

**Shipping Speed:**
One-Day Shipping

| | |
|---|---|
| Item(s) Subtotal: | $34.95 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $34.95 |
| Sales Tax: | $3.32 |
| | ----- |
| **Total for This Shipment:** | **$38.27** |
| | ----- |

| Payment information |
|---|

**Payment Method:**
Visa | Last digits: 8067

**Billing address**

Tina Williams
21444 PEGGY JOYCE LN
SANTA CLARITA,
CALIFORNIA 91350-1723
United States

| | |
|---|---|
| Item(s) Subtotal: | $34.95 |
| Shipping & Handling: | $0.00 |
| | ----- |
| Total before tax: | $34.95 |
| Estimated tax to be collected: | $3.32 |
| | ----- |
| **Grand Total:** | **$38.27** |

| **Credit Card transactions** | Visa ending in 8067: July 10, 2019: $38.27 |

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2019, Amazon.com, Inc. or its affiliates



**Sigma Pool Service**
P.O. Box 800025
Santa Clarita, CA  91380 US
(661) 505-3061
sigmapoolservice@gmail.com

# Estimate



| ADDRESS |
| --- |
| Tina Williams |
| 21444 Peggy Joyce Ln |
| Saugus, CA  91350 |

| ESTIMATE # | DATE | |
| --- | --- | --- |
| 1007 | 06/27/2019 | |

| ITEM | DESCRIPTION | AMOUNT |
| --- | --- | --- |
| Equipment Installation | Pool Filer 60 sqft | 1,100.00 |
| Equipment Installation | Pool heater 300,000 BTU | 2,900.00 |
| Equipment Installation | Variable Speed Pool Pump 3HP | 1,600.00 |
| Equipment Installation | Pool Electrical Sub-panel : Panel, breakers, GFCI breakers | 700.00 |

Pool equipment pad clean up is not included.
10% is due at signing.

TOTAL **$6,300.00**

Accepted By

Accepted Date



# i Construction

**"Building Your Vision"**
24752 Newhall Ave
Newhall CA 91321
Telephone: (661) 510 - 8554

Landscape and Hardscape Proposal
For the residence of:

**Ms. Tina Williams**
**21444 Peggy Joyce Lane**
**Saugus, CA 91350**
Email: Badassshoestore@gmail.com
Phone: (661) 312-1270
October 14,

2019

## Landscape and Hardscape Services

i Construction, ("landscaper") proposes to provide **Ms. Tina Williams**. ("Client") with equipment and labor to complete the scope of services outlined below. Once the proposal is accepted any changes requested by the Client will require a change order signed by both parties before any work can be initiated.

| SCOPE OF SERVICES | COST |
|---|---|
| **1.Shipwreck:** Contractor will install shipwreck on rear side of residence, homeowner to provide material | $4,000.00 |
| **TOTAL PROJECT COST** | $4,000.00 |

**COSTS:**
Cost for the project will be Four Thousand Dollars ($4,000.00). A deposit in the amount of two hundred ($200.00) is due at the time the proposal is accepted and signed by both parties. This

deposit will be credited to our final billing. The remaining portion of the fee, ($3,800.00), is due and payable as scheduled.

Payment Schedule:

| Completion | Payment Due |
|---|---|
| Remove Debris & Haul Away | (1) $1,000.00 |
| Install Shipwreck | (2) $3,000.00 |
| Final Walk-Through | (4) $800.00 |

Final project amount is due and payable upon completion of the project and final walk through. Landscaper reserves the right to cease all work and remove all equipment, material and labor from job site in the event interim payments are not received when due. Interest will accrue at the rate of one-half percent (1 1/2%) per month on any past due invoices.

### *Other Terms & Conditions*

If client's payments to landscaper are not made on a timely basis, landscaper reserves the right to not provide additional services until all payments are current in accordance with the payment schedule of this proposal letter.

This agreement may be modified only in writing with the consent of all parties. Any dispute or claim arising out of this agreement shall be decided by binding arbitration in accordance with the rules of the American arbitration association and not by court action except as provided by California law for judicial review of arbitration proceedings.

Any court having jurisdiction may enter judgment upon the award rendered by the arbitrator(s). The parties shall have the right of discovery in accordance with California code of civil procedure, section 1283.05.

If either party should bring arbitration against the other arising out of this agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs

Either party for any reason with a minimum of two (2) weeks prior written notice, providing the project has not been started may cancel this agreement.

In the event this agreement is cancelled client agrees to reimburse landscaper for time and materials up to and including the last day of the project, upon presentations of a final billing.

It is anticipated that the work outlined above can be completed in a period not-to-exceed ten (10) days of on-site work, excluding weekends. Saturday work will be done only upon agreement of both parties.

Landscape shall not be responsible for delays due to acts of nature, including rain, flooding, earthquake, etc. or inaccessibility to property beyond landscapers control.

The project would be tentatively scheduled to begin on _____ 2019. A firm date will be decided one both parties have signed this agreement. Landscaper reserves the right to withdraw this proposal if not accepted within 10 days of date of presentation.

Acceptance of proposal: the above prices, specifications, and condition are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Please sign, date and return a copy of this agreement to this office with your retainer payment.

**i Construction**                                    **Ms. Tina Williams**

By: _____          By: _____

    Ivan Lopez                                     Date: _____, 2019

INVOICE



**Sigma Pool Service**
P.O. Box 800025
Santa Clarita, CA 91380
sigmapoolservice@gmail.com

| Date | Invoice No. |
|------|-------------|
| 7/6/19 | 0107 |
| Terms | Due Date |
| Due on receipt | 7/6/19 |

Bill To

**Tina Williams**
21444 Peggy Joyce Ln
Saugus, CA 91350
twilliams62@live.com

| Amount Due | Enclosed |
|------------|----------|
| 0.00 | |

| Item | Description | Amount |
|------|-------------|--------|
| Repair | Filter +Circulation Pump plumbing modifications | $250.00 |
| Payment | Payment received | -$250.00 |
| | | |
| | **Total** | **$0.00** |

Thank you for your business!



Contractors State License # 1030367
22900 Oak Ridge Dr #62, Santa Clarita, CA, 91350

## Addendum for Home improvement contract

- **Client Name:** Tina Williams

- **Project address:** 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350

- **General Project description:** Pool and spa project base on the leak detection report

The following is submitted and directed by the property owner or the design team with regard to this project. Document have been reviewed in limited detailed as noted per this Scope to perform action enclosed .

We have projected that this project should take approximately 10-30 business days from the start date of construction if no holdups during construction do on unforeseen weather conditions or material delays in addition if client delays important construction decisions that can cause delays. It is our goal to complete the project in the shortest period of time while still retaining the quality that we are known for.

We would like to thank the Homeowners and everyone involved in this project for allowing us this opportunity to be of service and a part of this great project. We are looking forward to work with you.

A.S Builders Group Inc.

**Preparation:**

**Project Description:**

1.  Order rough and finish materials before starting the project.

2.  Cover Job site area and approve with the homeowner.

3.  Pull permit homeowner will pay the city fee.

4.  Order a dumpster truck

5.  Homeowner will provide: Tile and grout

6.  Demo the existing patio floor in order to fix the leaking pipe. Note: The price is not including to remove all the patio

Preparation price: $1,446.00

# Job Process:

## Pool project:

1. Returns: Cut concrete around the pool approximate 16"-24" wide trench, install 3 return's pipes and 1 automatic vacuum suction. plumbing around the pool to equipment ( with pressure test in new returns pipes)

TOTAL (LABOR AND MATERIAL) $3,192.00

## SPA project:

1. Work only on return jets and change Ortega valve, cut concrete around spa approximate 16¨ to 24¨ wide and install new pipes around the spa and from the spa to the pool/spa equipment (with pressure test and new plumbing)

TOTAL (LABOR AND MATERIAL) $3,192.00

**Pool and spa re-plaster project: (Fix leaks)**

Drain water, chip all the existing plaster and install new plaster on pool and spa, regular white plaster for pool and spa. (NEW PLASTER NEED STAR UP. STAR UP IS INCLUDED IN THE PRICE)

TOTAL (LABOR AND MATERIAL) $7,973.00

**Tile project:**

Brake old tile, clean base, work on the tile base, speed mix, tinset, install with ground around the pool and spa, water level tile.

TOTAL (NOT INCLUDE MATERIAL ONLY LABOR) $1,486.00

Customer agree's to make all payment to: A.S Builders Group Inc. A contractor may require a down payment. Down payment: The down payment may not exceed $1,000.00 or 10 percent of the contract price , whichever is less. Any changes or modification off this contract will be an additional charge, as agreed between contractor and client.

Upon acceptance of this Addendum to Contract and in acceptance with the terms of the original contract, the client agrees to pay A.S Builders Group Inc. the sum of

$17,289.00

Home owner (print name):_____

Sign :_____

Date:_____


Project manager (print name):_____

Sign:_____

Date:_____



# LOWE'S

## NEVER STOP IMPROVING

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400

- SALE -

SALES#: S1510LA1 2663678   TRANS#: 69304050 06-23-19

56849 NAVAHART 2DR RDTSQUIRREL        24.98

SUBTOTAL:          24.98
TAX:           2.37
INVOICE 20080  TOTAL:          27.35
CASH          30.00
CHANGE           2.65

STORE: 1510   TERMINAL: 20   06/23/19 08:34:25
# OF ITEMS PURCHASED:          1
EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER:  PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*
*        YOUR OPINIONS COUNT!                *
*        REGISTER FOR A CHANCE TO BE         *
*  ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY! *
*    ¡REGISTRESE EN EL SORTEO MENSUAL        *
*  PARA SER UNO DE LOS CINCO GANADORES DE $1,000! *
*                                            *
*  REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY  *
*     WITHIN ONE WEEK AT: www.lowes.com/survey  *
*        Y O U R   I D # 20080 1510 174      *
*                                            *
*     NO PURCHASE NECESSARY TO ENTER OR WIN.   *
*  VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
*  OFFICIAL RULES & WINNERS AT: www.lowes.com/survey *
*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*+*
STORE: 1510   TERMINAL: 20   06/23/19 08:34:25



# LOWE'S®

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400

--- SALE ---
SALES#: FSTLANE4 13  TRANS#: 58407712 06-24-19

```
498410 FURNITURE DOLLY (-74633)      22.98
191461 AE 20-IN COMBO VAC/WALL B     16.98
773204 8-OZ 3-IN XTRABLUE CHLORI      3.78
1262868 CLX SHOCK + 12-PACK (-649    39.87

          SUBTOTAL:              83.61
               TAX:               7.94
  INVOICE 07020  TOTAL:          91.55
        MERCH/GIFT CARD:         60.21
                  CASH:          40.00
                CHANGE:           8.66
```

SWIPED MERCH/GIFT CARD 1924  AUTHCODE    0
  BEGIN BAL    TRANSACTION AMT   ENDING BAL
    60.21          60.21            0.00
  STORE: 1510      TERMINAL: 07   06/24/19 13:21:52
# OF ITEMS PURCHASED:              4
  EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

```
YOUR OPINIONS COUNT!
REGISTER FOR A CHANCE TO BE
ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY!
¡REGISTRESE EN EL SORTEO MENSUAL
PARA SER UNO DE LOS CINCO GANADORES DE $1,000!

REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY
WITHIN ONE WEEK AT: www.lowes.com/survey
    Y O U R   I D #07020 1510 175

NO PURCHASE NECESSARY TO ENTER OR WIN.
VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER.
OFFICIAL RULES & WINNERS AT: www.lowes.com/survey
```

  STORE: 1510    TERMINAL: 07   06/24/19 13:21:52



# LOWE'S

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400

— SALE —

SALES#: 5151DLL1 2550499   TRANS#: 57B1447 06-28-19

| | | |
|---|---|---|
| 031502 10-GAL STACKABLE LATCHED | | 12.56 |
| 2 @ | 6.28 | |
| 831503 19-GAL STACKABLE LATCHED | | 13.76 |
| 2 @ | 6.88 | |
| 102927 RE FLOATING CHEM TAB DISP | | 9.98 |
| 649746 CLX MY POOL CARE ASSISTAN | | 12.98 |
| 773204 8-OZ 3-IN XTRABLUE CHLORI | | 3.78 |
| 1262860 CLX ALGAECIDE 40-OZ (-649 | | 19.98 |
| 29.98   DISCOUNT EACH | | -10.00 |
| 289868 KI MURIATIC ACID | | 10.98 |
| 77608 KT LIQUID CHLORINE 2 X 1- | | 13.72 |
| 2 @ | 6.86 | |
| 102924 RE 3-PC TELSCPIC POLE 4-F | | 20.98 |

|  | |
|---|---|
| SUBTOTAL: | 116.72 |
| TAX: | 11.28 |
| INVOICE 10449   TOTAL: | 130.00 |
| DEBIT: | 130.00 |
| **TOTAL DISCOUNT:** | **10.00** |

DEBIT:XXXXXXXXXXXX6067 AMOUNT:130.00 AUTHCD:071887
SWIPED REFID:151010347851 06/28/19 21:11:04
TRACE:00112852

| PURCHASE | CASH BACK | TOTAL DEBIT |
|---|---|---|
| 130.00 | 0.00 | 130.00 |

STORE: 1510   TERMINAL: 10   06/28/19 21:11:27

# OF ITEMS PURCHASED:   12

EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

********************************************
* YOUR OPINIONS COUNT! *
* REGISTER FOR A CHANCE TO BE *
* ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY! *
* ¡REGISTRESE EN EL SORTEO MENSUAL *
* PARA SER UNO DE LOS CINCO GANADORES DE $1,000! *
* *
* REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY *
* WITHIN ONE WEEK AT: www.lowes.com/survey *
* Y O U R   I D # 10449 1510 179 *
* *
* NO PURCHASE NECESSARY TO ENTER OR WIN. *
* VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
* OFFICIAL RULES & WINNERS AT: www.lowes.com/survey *
********************************************

STORE: 1510   TERMINAL: 10   06/28/19 21:11



# LOWE'S

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350    (661) 297-1400

- SALE -
SALES#: S1510HS3 2603011    TRANS#: 47409850 04-27-19

1061309 CFT 2PK 25FT              14.98
658760 FROGTAPE 1.88 IN MULTI SU   8.98



              SUBTOTAL:    23.96
                   TAX:     2.28
INVOICE 02676   TOTAL:     26.24
                  CASH :    30.25
                CHANGE:      4.01

  STORE: 1510   TERMINAL: 02   04/27/19 17:04:50
# OF ITEMS PURCHASED:            2
EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS

|| |||| ||| |||| ||| || ||||| ||| ||||| |||

THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

**************************************************
*         YOUR OPINIONS COUNT!                   *
*      REGISTER FOR A CHANCE TO BE               *
*  ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY!     *
*    ¡REGISTRESE EN EL SORTEO MENSUAL            *
*  PARA SER UNO DE LOS CINCO GANADORES DE $1,000!*
*                                                *
* REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY *
*    WITHIN ONE WEEK AT: www.lowes.com/survey    *
*      Y O U R   I D # 02676 1510 117            *
*                                                *
*    NO PURCHASE NECESSARY TO ENTER OR WIN.      *
* VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
*  OFFICIAL RULES & WINNERS AT: www.lowes.com/survey *
**************************************************
  STORE: 1510   TERMINAL: 02   04/27/19 17:04:50



# LOWE'S®

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400

## - SALE -

SALES#: S15T0J86 2653009   TRANS#: 71389504 07-05-19

| | | |
|---|---|---|
| 871284 GT PELHAM BAY 48-IN RND D | | 97.20 |
| 80013 SPEC 1-GAL B/W RTU | | 5.00 |
| 6.97   DISCOUNT EACH | | -1.97 |
| 670555 12-CT SS PAPER TOWEL | | 4.97 |
| 39369 12-OZ HAMMERED BLACK SPRA | | 17.94 |
| 3 @   5.98 | | |
| 99547 12-OZ GLOSS WHITE STOPS R | | 4.38 |
| 121649 DIET PEPSI 20-FL OZ PL SG | | 1.98 |
| CA BOTTLE DEPOSIT FEE | | 0.05 |

```
          SUBTOTAL:
             TAX:
INVOICE 09936  TOTAL:        ...02
              CASH :       160.00
            CHANGE:        15.98
```

**TOTAL DISCOUNT:**        **1.97**

STORE: 1510   TERMINAL: 09   07/05/19 22:05:31

**# OF ITEMS PURCHASED        8**

EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER:  PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

YOUR OPINIONS COUNT!
**REGISTER FOR A CHANCE TO BE**
**ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY!**
¡REGISTRESE EN EL SORTEO MENSUAL
PARA SER UNO DE LOS CINCO GANADORES DE $1,000!

REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY
**WITHIN ONE WEEK AT: www.lowes.com/survey**
Y O U R    I D # 09936 1510 186

NO PURCHASE NECESSARY TO ENTER OR WIN.
VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER.
RULES & WINNERS AT: www.lowes.com/survey
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

10   TERMINAL: 09   07/05/19 22:05:31



# LOWE'S®

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400

SALE

SALES# STEAN3J 13  TRAN#: 71059646 08-01-19

| | |
|---|---|
| 2/4909 BI 24INKSOFT EXTRA WIDE C | 11.96 |
| 42437 MINI OREOS 3-0Z | 2.08 |
| 121352 MIST INST 20-FL OZ | 1.98 |
| CA BOTTLE DEPOSIT FEE | 0.05 |
| 180219 BU 20 IN X 1000-FT STRETC | 49.96 |
| 2 @ 24.98 | |

| | |
|---|---|
| SUBTOTAL: | 66.03 |
| TAX: | 6.08 |
| INVOICE 06530 TOTAL: | 72.11 |
| CASH: | 73.00 |
| CHANGE: | 0.89 |

STORE: 1510    TERMINAL: 06   08/01/19 14:40:46
# OF ITEMS PURCHASED:          5
EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH
*****************************************************
*          YOUR OPINIONS COUNT!            *
*        REGISTER FOR A CHANCE TO BE       *
*    ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY!  *
*        ¡REGISTRESE EN EL SORTEO MENSUAL  *
*  PARA SER UNO DE LOS CINCO GANADORES DE $1,000!  *
*                                          *
*  REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY  *
*    WITHIN ONE WEEK AT: www.lowes.com/survey  *
*        Y O U R   I D #06530 1510 213     *
*                                          *
*    NO PURCHASE NECESSARY TO ENTER OR WIN.  *
*  VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER.  *
*  OFFICIAL RULES & WINNERS AT: www.lowes.com/survey  *
*****************************************************

STORE: 1510    TERMINAL: 06   08/01/19 14:40:46

# LOWE'S®

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350  (661) 297-1400

- SALE -
SALES#: S1510801 2261697  TRANS#: 2371/02 08-09-19

| | | |
|---|---|---|
| 935282 31-FL OZ ULTRA EGG BSA | | 14.28 |
| CA PAINTCARE RECOVERY F | | 0.35 |
| 935282 31-FL OZ ULTRA EGG BSA | | 14.28 |
| CA PAINTCARE RECOVERY F | | 0.35 |
| 44066 27-GAL HEAVY DUTY TOTE | | 29.94 |
| 10.98 DISCOUNT EACH | | -1.00 |
| 1 @ 9.98 | | 9.98 |
| 274909 BH 24INX35FT EXTRA WIDE C | | 11.96 |
| 1529187 PACKING PAPER 100 SHEETS | | 9.97 |
| 125596 STARTER 32FL OZ WEED/FE | | 12.98 |
| 277306 CA WILD ALLERGEN 2-CT | | 19.95 |
| 50 FT 500 PBS | | 19.77 |

| | |
|---|---|
| SUBTOTAL | 133.05 |
| TAX | 12.71 |
| INVOICE 19861  TOTAL: | 146.31 |
| CASH | 147.30 |
| CHANGE | 0.46 |

**TOTAL DISCOUNT:** 3.00
STORE: 1510  TERMINAL 08/09/19 15:38:48
**# OF ITEMS PURCHASED:** 9
EXCLUDES FEES, SERVICE AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

*****************************************************
* YOUR OPINIONS COUNT! *
* REGISTER FOR A CHANCE TO BE *
* ONE OF THE $500 WINNERS DRAWN MONTHLY! *
* ¡REGISTRESE EN EL SORTEO MENSUAL *
* PARA SER UNO DE LOS CINCO GANADORES DE $500! *
* *
* REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY *
* WITHIN ONE WEEK AT: WWW.LOWES.COM/SURVEY *
* Y O U R  I D # 19861 1510 221 *
* *
* NO PURCHASE NECESSARY TO ENTER OR WIN. *
* VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
* OFFICIAL RULES & WINNERS AT: WWW.LOWES.COM/SURVEY *
*****************************************************
STORE: 1510  TERMINAL: 19  08/09/19 15:3



# LOWE'S®

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400

- SALE -
SALES#: S1510HS3 2603011   TRANS#: 71295387 08-31-19

```
814045 24-IN X 36-IN  OLD ENGLIS     23.97
773162 AR URN FINIALS BRUSHED NI      2.99
239961 PLGB 0.22-IN X 18-IN X 24     26.48
239963 SILICONE SEALANT 2.8-OZ        5.98
563752 STK 15-FT WELL RECEIVED       43.88
           4 @   10.97
CA CARPET ASSESSMENT                  1.67

              SUBTOTAL:     104.97
                   TAX:       9.81
INVOICE 09545 TOTAL:        114.78
                  CASH:     120.00
                CHANGE:       5.22
```

STORE: 1510  TERMINAL: 09  08/31/19 16:50:02



**# OF ITEMS PURCHASED:     5**
EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS

THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

```
*******************************************
*        SHARE YOUR FEEDBACK!             *
*      ENTER FOR A CHANCE TO BE           *
*  ONE OF FIVE $500 WINNERS DRAWN MONTHLY!*
*      ¡ENTRE EN EL SORTEO MENSUAL        *
*  PARA SER UNO DE LOS CINCO GANADORES DE $500! *
*                                         *
*     ENTER BY COMPLETING A SHORT SURVEY  *
*   WITHIN ONE WEEK AT: www.lowes.com/survey *
*      Y O U R   I D # 09545 1510 243     *
*                                         *
*    NO PURCHASE NECESSARY TO ENTER OR WIN. *
*  VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
*  OFFICIAL RULES & WINNERS AT:  www.lowes.com/survey *
*******************************************
```

STORE: 1510   TERMINAL: 09   08/31/19 16:50:02



LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400

- SALE -

SALES#: 51510NM1 2493862   TRANS#: 19128097 09-21-19

| | | |
|---|---|---|
| 11935 PVC TLBRD 1S CNR WHT 8-FT | | 6.96 |
| | 2 @   3.48 | |
| 1074048 11X16 X 3-5/8 X 96 CROWN | | 9.96 |
| 15583 MDF CRWN 3046 6-7/16INX5/ | | 35.52 |
| 816466 64-FL OZ CLOROX PRORESULT | | 6.98 |
| | 2 @   3.49 | |
| 213793 13GAL 45CT SS KICHN BG (+ | | 6.98 |
| 654132 CHALKY PAINT TINT BASE 1 | | 31.98 |
| CA PAINTCARE RECOVERY F | | 0.35 |
| 295792 3M 48-IN X 180-FT MASKING | | 14.58 |
| 217371 1-QT LIQUID CEMENT CRACK | | 10.48 |
| 1100453 8 0ZCOLOR CHANGE WOOD FIL | | 6.96 |

| | |
|---|---|
| SUBTOTAL: | 130.77 |
| TAX: | 12.42 |
| INVOICE 10157  TOTAL: | 143.19 |
| CASH : | 160.00 |
| CHANGE: | 16.81 |

STORE: 1510   TERMINAL: 10   09/21/19 21:56:09

# OF ITEMS PURCHASED:   11

EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER:  PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH

```
***************************************************
*         SHARE YOUR FEEDBACK!                    *
*       ENTER FOR A CHANCE TO BE                  *
*   ONE OF FIVE $500 WINNERS DRAWN MONTHLY!       *
*         ¡ENTRE EN EL SORTEO MENSUAL             *
*   PARA SER UNO DE LOS CINCO GANADORES DE $500!  *
*                                                 *
*       ENTER BY COMPLETING A SHORT SURVEY        *
*     WITHIN ONE WEEK AT: www.lowes.com/survey    *
*        Y O U R   I D # 10157 1510 264           *
*                                                 *
*     NO PURCHASE NECESSARY TO ENTER OR WIN.      *
* VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
*  OFFICIAL RULES & WINNERS AT: www.lowes.com/survey  *
***************************************************
```

STORE: 1510   TERMINAL: 10   09/21/19 21:56:09



# i Construction

**"Building Your Vision"**
24752 Newhall Ave
Newhall CA 91321
Telephone: (661) 510 - 8554

Landscape and Hardscape Proposal
For the residence of:

**Ms. Tina Williams**
**21444 Peggy Joyce Lane**
**Saugus, CA 91350**
Email: Badassshoestore@gmail.com
Phone: (661) 312-1270
October 15, 2019

## Landscape and Hardscape Services

i Construction, ("landscaper") proposes to provide **Ms. Tina Williams**. ("Client") with equipment and labor to complete the scope of services outlined below. Once the proposal is accepted any changes requested by the Client will require a change order signed by both parties before any work can be initiated.

| SCOPE OF SERVICES | COST |
| --- | --- |
| **1.Plants:**<br>**#6 15 gallon yellow climbing bank roses @ $80.00 each**<br>**#50 5 gallon agapanthus purple blue color @ $25.00 each**<br>**Contractor will install plants where homeowner desires.** | $1,730.00 |
| **2. Sand:** Contractor will remove and haul away any debris where sand will be installed, 50 lbs sand bags will be installed on slope. Homeowner to provide Sand. | $2,500.00 |
| **3. Irrigation:** Modify irrigation repair any sprinklers that are damaged/broken on slope. Homeowner to provide materials needed. | $1,500.00 |

| **4. Low Voltage:** Contractor will provide 12-2 awg and pre-wire and install lighting fixtures homeowner to provide lighting fixtures and transformer | $1,000.00 |
|---|---|
| **TOTAL PROJECT COST** | $6,730.00 |

**COSTS:**

Cost for the project will be Six Thousand Seven Hundred Thirty Dollars ($6,730.00). A deposit in the amount of two hundred ($200.00) is due at the time the proposal is accepted and signed by both parties. This deposit will be credited to our final billing. The remaining portion of the fee, ($6,530.00), is due and payable as scheduled.

Payment Schedule:

| Completion | Payment Due |
|---|---|
| Remove Debris & Haul Away | (1) $1,000.00 |
| Install Plants | (2) $2,000.00 |
| Install Sand | (3) $2,500.00 |
| Final Walk-Through | (4) $1,030.00 |

Final project amount is due and payable upon completion of the project and final walk through. Landscaper reserves the right to cease all work and remove all equipment, material and labor from job site in the event interim payments are not received when due. Interest will accrue at the rate of one-half percent (1 1/2%) per month on any past due invoices.

**Other Terms & Conditions**

If client's payments to landscaper are not made on a timely basis, landscaper reserves the right to not provide additional services until all payments are current in accordance with the payment schedule of this proposal letter.

This agreement may be modified only in writing with the consent of all parties. Any dispute or claim arising out of this agreement shall be decided by binding arbitration in accordance with the rules of the American arbitration association and not by court action except as provided by California law for judicial review of arbitration proceedings.

Any court having jurisdiction may enter judgment upon the award rendered by the arbitrator(s). The parties shall have the right of discovery in accordance with California code of civil procedure, section 1283.05.

If either party should bring arbitration against the other arising out of this agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs

Either party for any reason with a minimum of two (2) weeks prior written notice, providing the project has not been started may cancel this agreement.

In the event this agreement is cancelled client agrees to reimburse landscaper for time and materials up to and including the last day of the project, upon presentations of a final billing.

It is anticipated that the work outlined above can be completed in a period not-to-exceed ten (10) days of on-site work, excluding weekends. Saturday work will be done only upon agreement of both parties.

Landscape shall not be responsible for delays due to acts of nature, including rain, flooding, earthquake, etc. or inaccessibility to property beyond landscapers control.

The project would be tentatively scheduled to begin on _____ 2019. A firm date will be decided one both parties have signed this agreement. Landscaper reserves the right to withdraw this proposal if not accepted within 10 days of date of presentation.

Acceptance of proposal: the above prices, specifications, and condition are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Please sign, date and return a copy of this agreement to this office with your retainer payment.

**i Construction**                                      **Ms. Tina Williams**

By: _____              By: _____

    Ivan Lopez                                Date: _____, 2019

# SERVIZ

SERVIZ
15350 Sherman Way Suite 250
Van Nuys, CA 91406
Email: support@serviz.com
Phone: (844) 473-7849

Estimate Prepared by Ricardo Velasquez
18958 Parthenia Apt #2, North Ridge, CA 91324

**Estimate**

Estimate Date: 9/26/19
Estimate No. 0056-5011

Customer/Client:

**Tina Williams**
21444 Peggy Joyce Ln
Santa Clarita, CA 91350

| Estimate Total | $2,854.95 USD |
|---|---|



## SKUs

| Item | Description | Unit Cost | Qty | Total |
|---|---|---|---|---|
| 2054 | Outside lighting new wiring 10 x led landscape and transformer installation 2,500.00 10x180=1,800 700 for low voltage system to panel | $2,500.00 | 1 | **$2,500.00** |
| 7064 | SERVIZ Protection Fee | $4.95 | 1 | **$4.95** |
| 2054 | 2 pool lights 175x2=350 If new re wire needs to be ran Add 75 per fixture | $350.00 | 1 | **$350.00** |

Use of the SERVIZ Platform is governed by the SERVIZ Terms and Conditions (www.serviz.com/terms).

| | |
|---|---|
| Subtotal | $2,854.95 |
| Tax | $0.00 |
| **Estimate Total** | **$2,854.95** |

Any discounts that are used or expired before this job is completed will not be applied to the final invoice. Discounts will be applied at the time of payment.



**This job is backed by the SERVIZ Consumer Protection Plan**

We stand behind the quality of our referred pros. If you're not satisfied, we guarantee that we will send out another pro or refund 100% of the money you paid to SERVIZ. Terms and Conditions Apply.
(www.serviz.com/consumer-protection-plan)

**We want your opinion!**

Don't forget to visit your status page to "rate us" and tell us how your job went.

Payment For Service Order: Upon the conclusion of the Services you will pay SERVIZ in full for the Services. You may pay by credit card or by check. If payment is not made, the amount owed shall incur interest at the rate of 1.5% per month (or the highest rate permitted by law, if less) until all amounts owed, including the interest, have been paid in full. In addition, as provided in the Serviz Consumer Terms and Conditions, in any dispute over the collection of any amounts owed to Serviz, the prevailing party shall be entitled to recover its reasonable legal fees and expenses.



For billing and service inquiries
1-800-684-8123
www.sce.com

# Your electricity bill

**WILLIAMS, TINA** / Page 1 of 4

| Customer account | Rotating outage | |
|---|---|---|
| 2-27-902-1554 | Group A052 | **Amount due $1,755.65** |

| Service account | Date bill prepared |
|---|---|
| 3-027-2192-53 | 04/16/19 |
| 21444 PEGGY JOYCE LN | |
| SAUGUS, CA 91350 | |

## PAST DUE

## Your account summary

| | |
|---|---|
| Your previous balance | $1,892.58 |
| Payment Received 04/01/19 | -$304.78 |
| Payment arrangement balance | $1,587.80 |
| Your new charges | $155.20 |
| Late payment charge | $12.65 |
| **Total amount you owe** | **$1,755.65** |

*In order to pay your total payment arrangement balance of $1,587.80 on time, you will need to pay:*
- *$100.00 by 05/06/19*
- *$100.00 by 06/04/19*
- *$1,387.80 by agreed upon future dates*
*Your total new charges of $167.85 are due by 05/06/19.*
*Your payment arrangement will be cancelled if we do not receive your payments by 5 p.m. on the dates specified and your service may be disconnected without further notice.*

## You Received a California Climate Credit

*California is fighting climate change and so can you! Your bill includes a Climate Credit from a state program to cut carbon pollution while also reducing your energy costs. Find out how at EnergyUpgradeCA.org/credit.*

## Your past and current electricity usage

For meter 222013-532080 from 03/14/19 to 04/12/19
**Total *estimated* electricity usage this month in kWh**          863

*Your next billing cycle will end on or about 05/14/19.*

---

Please return the payment stub below with your payment and make your check payable to Southern California Edison.
If you want to pay in person, call 1-800-747-8908 for locations, or you can pay online at www.sce.com.

(14-574)          Tear here                                                                                    Tear here



Customer account 2-27-902-1554
Please write this number on the memo line of your check. Make your check payable to Southern California Edison.

| | |
|---|---|
| Payment arrangement amount | $1,587.80 |
| New charges - pay by 05/06/19 | $167.85 |
| **Total amount you owe** | **$1,755.65** |
| Amount enclosed | $ |

STMT 04162019 P1

WILLIAMS, TINA
21444 PEGGY JOYCE LN
SAUGUS, CA 91350-1723

P.O. BOX 600
ROSEMEAD, CA  91771-0001

27 902 1554 00000015 0001587800000167850000175565

# Ways to contact us

## Request a large print bill  1-800-655-4555

### Customer service numbers
*Relay calls accepted*

| | |
|---|---|
| General Services (U.S. & Canada) | 1-800-655-4555 |
| Payments, Extensions or Payment Options | 1-800-950-2356 |
| Emergency Services & Outages | 1-800-611-1911 |
| California Alternate Rates for Energy (CARE) | 1-800-447-6620 |
| Energy Theft Hotline | 1-800-227-3901 |
| Hearing & Speech Impaired (TTY) | 1-800-352-8580 |

### Multicultural services

| | |
|---|---|
| Cambodian / ខ្មែរ | 1-800-843-1309 |
| Chinese / 中文 | 1-800-843-8343 |
| Korean / 한국어 | 1-800-628-3061 |
| Vietnamese / Tiếng Việt | 1-800-327-3031 |
| Spanish / Español | 1-800-441-2233 |

### Correspondence:
Southern California Edison
P.O. Box 6400
Rancho Cucamonga, CA
91729-6400

www.sce.com

---

# Important information

## What are my options for paying my bill?

| On-line | Pay one-time or recurring on **www.sce.com/bill** | |
|---|---|---|
| Mail-in | Check or Money order | |
| In Person | Authorized payment locations | 1-800-747-8908 |
| Phone | QuickCheck | 1-800-950-2356 |
| | Debit & credit card * | 1-800-254-4123 |
| | *Residential customers only | |

## Electronic check processing
Your check payment will be processed as a one-time Electronic Fund Transfer (EFT). With EFTs, funds may be withdrawn from your account the day we receive your payment. Your check will not be returned, but will appear on your financial statement.

## Rates and applicable rules:  Available at www.sce.com or upon request.

## Past due bills
When is my bill past due? It is past due 19 days after the preparation date, which was 04/16/19.
• Reconnecting service that has been disconnected requires a Service Connection payment.
• Unable to pay: If payment arrangements were not extended to you by SCE pursuant to SCE's filed tariffs, you may contact the California Public Utilities Commission.
• For safety reasons, if service is disconnected, please ensure any sensitive or potentially hazardous equipment is unplugged on the day of reconnection. For additional home safety tips, visit www.sce.com/safety or call SCE at 1-800-655-4555.

## What is the Late Payment Charge (LPC)?
0.8% will be applied to the total unpaid balance if payment is not received by the due date on this bill (except for CARE and state agency accounts).

## What is a rotating outage?
Rotating outages are controlled electrical outages used to avoid widespread or uncontrolled blackouts. Your Rotating Outage Group number is located on page 1, upper left, of your SCE bill. Your rotating outage group number may change at any time. For more information, visit www.sce.com/rotating outage.

## Disputed bills
*If you believe there is an error on your bill* or have a question about your service, please call **Southern California Edison (SCE)** customer support at **1-800-655-4555**. *If you are not satisfied with SCE's response, submit a complaint to the California Public Utilities Commission (CPUC) at www.cpuc.ca.gov/ complaints/. The CPUC's Consumer Affairs Branch (CAB) handles billing and service complaints and can be reached by:*
*Telephone  1-800-649-7570 (8:30 AM - 4:30 PM, Monday - Friday)*
*Mail         CPUC, Consumer Affairs Branch, 505 Van Ness Ave., Room 2003, San Francisco, CA 94102*
*If you have limitations hearing or speaking, contact the California Relay Service, which is for those needing assistance relaying telephone conversations. Dial 711 or one of the numbers below to be routed to a California Relay Service provider in your preferred mode of communication.*

| Type of Call | English | Spanish |
|---|---|---|
| TTY/VCO/HCO to Voice | 1-800-735-2929 | 1-800-855-3000 |
| Voice to TTY/VCO/HCO | 1-800-735-2922 | 1-800-855-3000 |
| Speech-to-Speech Relay | 1-800-854-7784 | 1-800-854-7784 |

*To avoid having service turned off while waiting for the outcome of a complaint to the CPUC regarding the accuracy of your bill, contact CAB for assistance. If your case meets the eligibility criteria, CAB will instruct you on how to mail a check or money order to be impounded pending resolution of your case. You must continue to pay your current charges while your complaint is reviewed to keep your service turned on.*

## Definitions
• **CA Climate Credit:** Credit from state effort to fight climate change. Applied monthly to eligible businesses and semi-annually to residents.
• **DWR Bond Charge:** Bonds issued by the Department of Water Resources (DWR) to cover the cost of buying power during the energy crisis are being repaid through this charge.
• **Public Purpose Programs Charge:** Funds state-mandated programs for low income discounts, energy efficiency, renewable energy and R&D.
• **SCE Generation:** For recovering energy procurement and generation costs for that portion of your energy provided by SCE.

---

To change your contact information or enroll in SCE's payment option, complete the form below and return it in the enclosed envelope.

---

**Change of mailing address: 2-27-902-1554**

| STREET# | STREET NAME | | APARTMENT # |
|---|---|---|---|
| CITY | | STATE | ZIP CODE |
| TELEPHONE # | | E-MAIL ADDRESS | |

**Direct Payment (Automatic Debit) Enrollment: 2-27-902-1554**
I hereby authorize SCE and my financial institution to automatically deduct my monthly payment from the checking account as shown on my enclosed check, ten calendar days after my bill is mailed.

Signature _____  Date _____

To change your checking account information or to be removed from the Direct Payment program please call SCE at 1-800-655-4555.

---

**Energy Assistance Fund (EAF):** I want to help people pay their energy bill through EAF. For info visit www.sce.com/eaf or call (800) 205-8596.

Round-up my bill to next whole dollar amount for EAF

☐ Every Month    ☐ One Month only

Add this amount for EAF $ _____

☐ Every Month    ☐ One Month only

Select one box only and sign below for EAF:
_____

SOUTHERN CALIFORNIA
**EDISON**
An EDISON INTERNATIONAL® Company

**WILLIAMS, TINA /** Page 3 of 4

---

**Your daily average electricity usage (kWh)**

2 Years ago: 44.00          Last year: 193.20          This year: 29.76



## Details of your new charges

Your rate: DOMESTIC
Billing period: 03/14/19 to 04/12/19 (29 days)

| | | |
|---|---|---|
| **Delivery charges** - *Cost to deliver your electricity* | | |
| Basic charge | 29 days x $0.03100 | $0.90 |
| Energy-Winter | | |
|   Tier 1 (100% of baseline) | 357 kWh x $0.09505 | $33.93 |
|   Tier 2 (101% to 400%) | 506 kWh x $0.14799 | $74.88 |
| DWR bond charge | 863 kWh x $0.00503 | $4.34 |
| CA Climate Credit | | -$33.00 |
| | | |
| **Generation charges** - *Cost to generate your electricity* | | |
| *DWR* | | |
| DWR energy credit | 863 kWh x -$0.00007 | -$0.06 |
| *SCE* | | |
| Energy-Winter | | |
|   Tier 1 (100% of baseline) | 357 kWh x $0.08570 | $30.59 |
|   Tier 2 (101% to 400%) | 506 kWh x $0.08570 | $43.36 |
| Subtotal of your new charges | | $154.94 |
| State tax | 863 kWh x $0.00030 | $0.26 |
| **Your new charges** | | **$155.20** |

*Your Delivery charges include:*
- *$12.86 transmission charges*
- *$73.66 distribution charges*
- *$0.04 nuclear decommissioning charges*
- *$5.54 conservation incentive adjustment*
- *$11.92 public purpose programs charge*
- *$5.31 new system generation charge*

*Your Generation charges include:*
- *$0.65 competition transition charge*

*Your overall energy charges include:*
- *$1.41 franchise fees*

*Additional information:*
- *Service voltage: 240 volts*
- *Your winter baseline allowance: 357.0 kWh*
- *High Usage Charge applies to all usage above 400% of baseline allowance.*

---

| Your Total Usage: | **863 kWh** | Tier 1 | Tier 2 | High Usage Charge |
|---|---|---|---|---|
| | | 357 kWh | 506 kWh | 0 kWh |

***Understanding Your Bill...***
*Your usage for the billing period falls into* **Tier 2**. *For most customers, the price you pay increases as you use more energy. The average cost per kilowatt (kWh) in the chart to the right is based on averages. Actual prices may vary.*

| $0.19/kWh | $0.24/kWh | $0.42/kWh |
|---|---|---|

**Your Total Usage**
**863 kWh**

High Usage Charge - Learn more at on.sce.com/highuse

# INVOICE



INVOICE 018988
DATE: JULY, 2019

28961 Rue Daniel
Canyon Country, California 91387
**(661) 373-5236**

**TO:**
Tina Williams
21444 Peggy Joyce Lane
Santa Clarita, California 91350
**(661) 312-1270**

**COMMENTS OR SPECIAL INSTRUCTIONS:**

Customer concerned over yellow tag posted by City of Santa Clarita. Shoring to be according to City of Santa Clarita Code and Regulations. City inspector to visit home upon completion to validate work completed meets with City regulations in order to remove hazard.

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|:---:|---|:---:|:---:|
| 1 | Shoring and support of 10 ft.h x 57 ft. w partially collapsed concrete wall. | $5500.00 | $5500.00 |
| | Senior Discount 10% | ($550.00) | ($550.00) |
| | Total Due Upon Completion | $4950.00 | $4950.00 |
| | | | |
| | Paid Cash | ($4950.00) | ($4950.00) |
| | Paid in Full | | |
| | | | |
| | | | |

| | | |
|---:|:---:|
| **SUBTOTAL** | **N/A** |
| SALES TAX | N/A |
| SHIPPING & HANDLING | N/A |
| TOTAL DUE | $0.00 |

Work guaranteed for one year from month of service. Make all checks payable to Santa Clarita Home Repair
If you have any questions concerning this invoice, contact Accounts Receivable, ap.ericgreer03@gmail.com or contact
Eric Greer directly at (661) 373-5236.

**THANK YOU FOR YOUR BUSINESS!**



July 3, 2019                                                        Project No. 19011

Ms. Tina Williams
21444 Peggy Joyce Ln
Santa Clarita, CA

Subject:        Proposed to Provide Subsurface Investigation and Geotechnical
                Report, Proposed Retaining Wall
                21444 Peggy Joyce Ln, Santa Clarita, CA

Dear Ms. Williams:

NTS Geotechnical, Inc. (NTS) is pleased to submit this proposal to perform a subsurface investigation and prepare a geotechnical report for the proposed retaining wall reconstruction located at 21444 Peggy Joyce Ln, in the City of Santa Clarita, California. Our understanding of the project is based on our correspondence you on July 3, 2019.

We understand that the existing retaining wall separating your property and the back lot has failed and will be reconstructed.

Based on our understanding of the proposed project, we have developed the following scope of services:

- Task 1 – Review Background Information
- Task 2 – Coordinate and Perform Field Exploration
- Task 3 – Perform Geotechnical Laboratory Testing
- Task 4 – Conduct Engineering Analyses
- Task 5 – Prepare Preliminary Geotechnical Report
- Task 6 – Response to Review Comments

The following sections provide a description of each of the above tasks and our approach to complete each task.

### *Task 1 – Review Background Information*

We will review available geotechnical investigation reports for the site vicinity and any other geotechnical reports prepared adjacent structures, if available. We will also review available published and unpublished geologic literature contained in our files, including publications prepared by the California Geological Survey (CGS) and the United States Geological Survey (USGS). This information will help us focus our field investigative efforts and review the general geologic information in the vicinity of the site.

### Task 2: Perform Field Exploration

Before starting our exploration program, we will conduct a field reconnaissance to observe the site conditions and to mark the locations of our planned subsurface explorations. As required by law, we will notify Underground Service Alert (USA) of the proposed subsurface exploration



locations at least 48 hours prior to performing our excavations so that conflicts between the proposed locations and underground utilities can be identified. We have assumed that access to the property will be provided and that the client will provide site-specific, as-built utility plans, if available.

We propose to explore the site by advancing a total of 2 hand auger borings in the planter area to depths ranging between 10 and 15 feet below the existing grade.

The proposed borings will be manually excavated with hand tools. We will coordinate with you upon marking our proposed borings to determine best access to the site. We anticipate that the borings can be completed in one work day.

The borings will be observed by our engineer or geologist, who will log the subsurface conditions encountered and will obtain driven and bulk samples for laboratory observation and testing. It is assumed that no higher than Level D for personal protection equipment will be required (i.e., hard hat, steel-toe boots, eye and hearing protection).

Drive samples and grab samples will be collected. Immediately upon completion of excavation and sampling, the borings will be backfilled with soil derived from excavations. Any remaining soils will be spread out in existing dirt-covered areas. *It is important to note that drumming and disposal of excavated soil cuttings is beyond our scope of services as presented in this proposal. If requested, the cuttings can be transported off site and NTS will provide you with an adjusted field exploration cost estimate to include drumming, disposal of the cuttings, and backfilling the boreholes with bentonite chips or grout.*

We will conduct the drilling and sampling in general accordance with applicable American Society of Testing and Materials (ASTM) standards. At the completion of the drilling, we will transport the samples to the laboratory where they will be handled as described in Task 3.

**Task 3: Perform Geotechnical Laboratory Testing**

Samples obtained from the exploratory borings will be transported to a laboratory for visual classification and testing. Laboratory tests will be performed by on selected samples obtained from the borings to aid in the classification and to evaluate the engineering properties of the foundation soils. The laboratory tests will include the following:

- In-situ moisture and density testing;
- Soil classification testing including grain-size distribution; and
- Corrosivity: pH, Resistivity, Soluble Sulfate, and Chloride Tests.

The exact quantities and types of tests will depend on the material types encountered during our subsurface exploration. For the purposes of this proposal, we have estimated a laboratory testing budget based upon our experience with similar projects.

**Task 4: Conduct Engineering Analysis**

The results of our field exploration and geotechnical laboratory tests will be evaluated and engineering analyses will be performed in order to provide geotechnical recommendations for the design and construction of the proposed project. We propose to perform the following analyses to meet these objectives:



- Evaluation of general subsurface conditions and description of types, distribution, and engineering characteristics of subsurface materials at the site;
- Evaluation of site geology and geologic hazards in conformance with 2016 California
- Building Code (CBC) Section 1803.6, including site seismicity, liquefaction and seismic settlement potential, and preliminary recommendations for appropriate mitigation measures, if necessary;
- Evaluation of current and historical groundwater conditions at the site and potential impact on design and construction;
- Evaluation of the seismic design parameters in accordance with 2016 CBC for use in structural design and site specific seismic response spectra, if required;
- Evaluation of the feasibility of using on-site soils for foundation and fill support;
- Evaluation of the corrosion potential of near surface on-site soils; and
- Recommendations for foundation systems (we have assumed shallow foundations but we will evaluate the most appropriate system, i.e., possibly intermediate or deep foundations depending upon the soil conditions and geology encountered during our excavations), and provision of allowable bearing capacities, associated settlement estimates, and lateral pressures and resistances.

**Task 5: Prepare Preliminary Geotechnical Report**

A preliminary report will be prepared to summarize the data collected and present our findings, conclusions, and geotechnical recommendations for design and construction of the proposed project. The report will include the following:

- Site location map;
- Project information;
- Boring location map and logs of test pits that include summarized laboratory testing results;
- Soil classification of the soil materials encountered in accordance with the Unified
- Soil Classification System (USCS);
- Seismic design parameters;
- Review/summary of field and laboratory test procedures and data;
- Geotechnical recommendations (in accordance with Task 4 of this proposal).

**Task 6: Response to Review Comments**

The City of Santa Clarita will review the Geotechnical Report. The magnitude of review comments is difficult to predict since it is dependent on the reviewer, details of the final design, and complexities related to the project. NTS can prepare a separate proposal for response to comments once the review comments are received.

We will provide an electronic PDF copy of report signed by a California Registered Civil Engineer.



**ESTIMATED FEE**

We propose to provide the scope of services described in accordance with the work plan provided in this proposal a ***lump sum fee of $5,000.***

Our estimated fee for the proposed scope of services is based on our 2019 Fee Schedule. Any authorized services beyond the proposed scope will also be based on this fee schedule. This proposal and fee estimate are valid for a period of 90 days.

Our estimated fees are based on the assumption that the borings are performed during regular business hours. Environmental profiling, removal, and disposal of soil cuttings are beyond the scope of services presented in this proposal. Services beyond the scope of this proposal may be provided on time-and-material basis in accordance with the attached fee schedule.

**LIMITATIONS**

Please notify us immediately if the proposed scope of services does not meet your current needs, or if any significant changes are made to the proposed development so that we can revise our scope of services accordingly. Revision of the scope of services may affect the estimated fee.

The estimated fee in this proposal is not sufficient to cover costs related to the repair of damaged underground utilities. NTS will not be responsible for the repair or costs of repairs on any damaged underground utilities, unless it is due to the sole negligence of NTS.

Our field exploration does not include sampling, testing or assessment of toxic or hazardous substances, if such are encountered, or evaluation of other environmental issues.

**CLOSURE**

Please do not hesitate to call if there are any questions or if you would like to discuss any aspect of this proposal.  If you find our scope and budget estimate acceptable, please execute this proposal by signing the next page, and return a signed copy to us. In addition, to authorize this firm to proceed, ***please also return a retainer of $2,500*** with the signed proposal. The final $2,500 is due before submittal of the report. Acceptance and signing of this proposal indicates an acceptance of the attached terms and conditions.

Respectfully submitted,

**NTS GEOTECHNICAL, INC.**

Nadim T. Sunna, M.Sc., QSP, PE
Principal Engineer

(Submitted via e-mail)

Attachments: 2019 Fee Schedule



Terms and Conditions

*This agreement, between NTS Geotechnical, Inc. and* Tina Williams *(CLIENT) is entered into, this date of July 3, 2019 and whereby the CLIENT desires to engaged NTS Geotechnical, Inc. to perform professional services at the project stated above.*

*By signing in the space provided below, the CLIENT hereby accepts the attached terms and conditions. Please email a signed copy back to info@ntsgeo.com. Our receipt of a signed acceptance will constitute your authorization for NTS Geotechnical, Inc. to proceed with the scope of services described above.*

*Please be advised that NTS Geotechnical, Inc. employs professionals licensed by the California Board for Professional Engineers, Land Surveyors, and Geologists.*

Signature of Client or Authorized Agent:

_____     Date:  _____ / _____ / _____



## 2019 FEE SCHEDULE

**PROFESSIONAL SERVICES**

Staff Engineer/Geologist                              $110.00/hour
Project Engineer/Geologist                            $145.00/hour
Senior Engineer/Geologist                             $175.00/hour
Principal Engineer/Geologist                          $195.00/hour

**GEOTECHNICAL LABORATORY TESTING SERVICES**

Laboratory Technician                                 $115.00/hour



**TERMS AND CONDITIONS**
**JUNE 2019**

1. **Scope of Work**
Engineer ("NTS Geotechnical, Inc.") shall perform the services outlined in the attached Scope of Work, which may only be amended by Client and Engineer in writing.  If Engineer provides Client with a writing confirming the change in scope, it shall become an amendment to this Agreement unless Client objects in writing within five (5) working days after receipt.  All work performed by Engineer at the Project is subject to the terms and limitations of this Agreement.

2. **Payments to Engineer**
   **2.1  Lump Sum**
   This proposal and/or portions of this proposal may be on a lump sum basis.  All lump sum costs are due in full prior to the initiation of work.
   **2.2  Time and Materials**
   All out-of-scope work performed under this Agreement shall be on a time and materials basis unless otherwise specifically agreed to in writing by both parties.
   2.3  *Late Payment Charge*
   All invoices are due on receipt.  If Client fails to make any payment due Engineer for services and expenses within fifteen (15) days after receipt of Engineer's invoices, the amounts due Engineer shall, thereafter, include a late payment charge at the rate of 1½% per month,  or  the  highest  rate permitted by law, from the thirtieth day.

3. **Standard of Performance; Disclaimer of Warranties**
Engineer shall perform its Services consistent with that level of care and skill ordinarily exercised by other professional engineers under similar circumstances at the time the Services are performed.  No warranty, express or implied, is included or intended by this Agreement.    Client recognizes that neither

Engineer nor any of Engineer's subconsultants owe any fiduciary responsibility to Client.

4. **Engineer's Estimate of Construction Costs**
Client acknowledges that construction and development are subject to many influences that are not subject to precise forecasting and are outside of Engineer's control.  Client further acknowledges that actual costs incurred may vary substantially from the estimates prepared by Engineer and that Engineer does not warrant or guarantee the accuracy of construction or development cost estimates.

5. **Construction Phase Services**
If the scope of Engineer's work includes observation and testing during the course of construction, Engineer shall:

5.1 Make visits to the site at intervals appropriate to the various stages of construction as Client may request, in order to observe the geotechnical conditions encountered by Contractor(s) and the progress and quality of the geotechnical aspects of Contractor(s)' work.  Based on information obtained during such visits and on such observations, Engineer shall inform Client of the progress of the geotechnical aspects of the work.  Client understands that Engineer may not be on site continuously nor shall Engineer observe all of Contractor's Work.

5.2 Engineer shall perform such services as are stated in the Scope of Work.  Such services shall be performed in accordance with current engineering standards.  Client understands that services performed by Engineer on finished work, or work in progress, are taken intermittently and indicate, on a statistical basis, the general acceptability of the work.  Testing or



observation by Engineer of portions of the work of other parties on a project are not a guarantee of the quality of Contractor's work and shall not relieve such other parties from their responsibility for performing their work in accordance with applicable plans, specifications, and safety requirements.

5.3 Engineer shall not supervise, direct, or have control over Contractor(s)' work nor shall Engineer have authority over or responsibility for the means, methods, techniques, sequences, or procedures of construction selected by Contractor(s) for the Project, for safety precautions and programs incident to Contractor(s)' work or for any failure of Contractor(s) to comply with Laws and Regulations applicable to Contractor(s) furnishing and performing its work.

## 6.  Client's Responsibilities

In addition to payment for the Services performed under this Agreement, Client agrees to:

6.1 Assist and cooperate with Engineer in any manner necessary and within its ability to facilitate Engineer's performance under this Agreement.

6.2 Designate a representative who will have authority to receive all notices and information pertaining to this Agreement and who will enunciate Client's policies and decisions and assist as necessary in matters pertaining to the Project and this Agreement.  Client's representative will be subject to change by written notice.

6.3 Provide access to and/or obtain permission for Engineer to enter upon all property, whether or not owned by Client, as required to perform and complete the Services.  Client recognizes that the use of investigative equipment and practice may unavoidably alter conditions or affect the environment at the existing Project Site(s). Engineer will operate with reasonable care to minimize damage to the Project Site(s). The cost of repairing such damage will be borne by Client, and is not included in the Fee unless otherwise stated.

6.4 Correctly designate on plans to be furnished to Engineer, the location of all subsurface structures, such as pipes,

tanks, cables, and utilities within the property lines of the Project Site(s) and shall be responsible for any damage inadvertently caused by Engineer to any such structure or utility not so designated. Client warrants the accuracy of any information supplied by it to Engineer, and acknowledges that Engineer is entitled to rely upon such information without verifying its accuracy.

6.5 Supply to Engineer all information and documents in its possession or knowledge which are relevant to the Services herein described.  Prior to the commencement of any Services in connection with a specific property, Client shall notify Engineer of any known potential or possible health or safety hazards existing on or near the Project Site, with particular reference to Hazardous Materials or conditions.

## 7.  Changed Conditions

If, during the course of performance of this Agreement, conditions or circumstances are discovered which were not contemplated by Engineer at the commencement of this Agreement, Engineer shall notify client in writing of the newly discovered conditions or circumstances, and Client and Engineer shall renegotiate, in good faith, the terms and conditions of this Agreement.  If amended terms and conditions cannot be agreed upon within thirty (30) days after notice, Engineer may terminate this agreement and be compensated as set forth in Section 17, "Termination".

## 8.  Hazardous Materials

Client understands that Engineer's services under this Agreement are limited to geotechnical engineering and that Engineer shall have no responsibility to locate, identify, evaluate, treat, or otherwise consider or deal with hazardous materials.  Client shall be solely responsible for notifying all appropriate federal, state, municipal, or other governmental agencies, including the potentially affected public, of the existence of any hazardous materials located on or in the project site, or located during the performance of this Agreement.  The existence or discovery of hazardous materials shall constitute a Changed Condition under this Agreement.



9. **Certifications**

Engineer shall not be required to execute any certification with regard to work performed, tested, or observed under this Agreement unless: 1) Engineer believes that sufficient work has been performed by Engineer to provide a sufficient basis to issue the certification, 2) Engineer believes that the work performed, tested, or observed meets the criteria of the certification, and 3) the exact form of such certification has been approved by Engineer, in writing, prior to execution of this Agreement. Any certification by Engineer is limited to an expression of professional opinion based upon the service performed by Engineer, and does not constitute a warranty or guarantee, either expressed or implied.

10. **Allocation of Risk**

10.1 *Limitation of Liability*

The total cumulative liability of Engineer, its shareholders, directors, officers, employees, and agent, to Client arising from Services performed or to be performed by Engineer for this Project whether in contract, indemnity, contribution, tort, or otherwise and including attorney's fees due under this Agreement, shall not exceed 100% of gross compensation received by Engineer under this Agreement provided, however, that such liability shall be further limited in the following respects:

Engineer shall not be liable to Client for any losses, damages, or claims arising from damage to subterranean structures or utilities which are not correctly shown on plans furnished by Client to Engineer during the performance of authorized Services or which are not called to Engineer's attention by Client.

10.2 *Indemnification*

10.2.1 *Hazardous Materials*

Client agrees to indemnify and hold harmless the Engineer Entities from and against any and all claims, suits, liability, damages, injunctive or equitable relief, expenses, including attorneys' fees or other loss ("Loss"), which arises from, or which is related to, the existence, disposal, release, discharge, treatment, or transportation of hazardous materials, or the exposure of any person to hazardous materials, or the degradation of the environment due to the presence, discharge, disposal, release of, or exposure to, hazardous material.

10.2.2 *Indemnification Provisions*

If any indemnification provisions are imposed upon the Engineer, such provisions shall not create, exceed, exert, or establish any greater rights, obligations, or responsibilities than those presently existing under the laws of negligence of the State of California, and the applicability of such provisions shall be limited to the insurance limits recoverable for such damages and losses.

10.2.3 *Third Party Indemnification*

Client agrees to indemnify and hold Engineer harmless for the Client's own negligence or for the negligence of anyone for whom the Client is legally liable. Additionally, and in light of the fact that Engineer's scope of services under this proposal does not include inspection, analysis, or investigation of any kind into the design or construction of existing conditions at the Project, the Client agrees to defend, indemnify, and hold Engineer harmless from and against any and all claims, damages, liabilities and costs, including all attorney's fees and costs of defense, arising out of or in any way related to existing conditions at the project.

10.3 *Continuing Agreement*

Client and Engineer agree that any and all protections, limitations of liability, and indemnification agreements noted herein shall extend to the officers, partners, and employees of Client and Engineer, respectively.

11. **Ownership and Maintenance of Documents**

Client-provided documents will remain the property of Client. Unless otherwise specified



in the Scope of Work, all documents and information obtained or prepared by Engineer in connection with the performance of the Services, including but not limited to Engineer's reports, boring logs, maps, field data, field notes, drawings and specifications, laboratory test data, and other similar documents (collectively called "Documents") are the property of Engineer and Engineer shall, in its sole discretion, have the right to dispose of or retain the Documents. Reuse of Engineer's documents for any purpose other than for this Project requires express written authorization from Engineer. Client agrees to defend, indemnify, and hold Engineer harmless from any unauthorized use of Engineer's documents.

## 12. Relationship of the Parties

Engineer shall perform Services under this Agreement as an independent contractor, and its employees shall at all times be under its sole discretion and control. Engineer shall select the means, manner, and method of completing Services without detail, control, or direction from Client.

## 13. Third Party Reliance Upon Reports

All Documents are prepared solely for use by Client and shall not be provided to any other person or entity without Engineer's written consent, nor shall they be mentioned, communicated, disclosed, or referred to in any offering circular, securities offering, loan application, real estate sales documentation, or similar promotional material, without the express written authorization of Engineer. Client shall defend, indemnify, and hold harmless Engineer, its officers, shareholders, and employees from and against any action or proceeding brought by any person or entity claiming to rely upon information or opinions contained in reports or other documents provided to such person or entity, published, disclosed, or referred to without Engineer's written consent.

No other party other than Client may rely, and Client shall make no representations to any party that such party may rely, on Documents without Engineer's express written authorization.

Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Client or the Engineer. Engineer's services under this Agreement are being performed solely for the Client's benefit, and no other entity shall have any claim against the Engineer because of this Agreement or the performance or nonperformance of services hereunder. The Client agrees to include a provision in all contracts with contractors and other entities involved in this project to carry out the intent of this paragraph, and further agrees to defend, indemnify, and hold Engineer harmless for any claims, suits, liability, damages, injunctive or equitable relief, expenses, including attorney's fees or other loss ("Loss") asserted by any third party against Engineer.

## 14. Assignment and Subcontracts

Neither party shall assign this Agreement, or any part thereof, without the written consent of the other party, except an assignment of proceeds for financing purposes. Engineer may subcontract for the services of others without obtaining Client's consent where Engineer deems it necessary or desirable to have others perform certain Services.

## 15. Suspension and Delays

Client may, at any time, by ten (10) days written notice, suspend performance of all or any part of the Services by Engineer, Engineer may terminate this Agreement if Client suspends Engineer's work for more than sixty (60) days and be paid as set forth under Section 17 "Termination".

## 16. Termination

17.1 *Termination for Convenience*
Engineer and Client may terminate this Agreement for convenience upon thirty (30) days written notice delivered or mailed to the other party.

17.2 *Termination for Cause*
In the event of material breach of this Agreement, the party not breaching the Agreement may terminate if upon ten (10) days written notice delivered or mailed to the other party, which termination notice shall state the basis for the termination. The Agreement shall not be terminated for



cause if the breaching party cures the breach within the ten day period.

17.3 *Payment on Termination*

In the event of termination, other than caused by a material breach of this Agreement by Engineer, Client shall pay Engineer for the Services performed through the termination notice date, and for any necessary Services and expenses incurred in connection with the termination of the project, including but not limited to, the costs of completing analysis, records, and reports necessary to document job status at the time of termination and costs associated with termination of subcontractor contracts. Such compensation shall be based upon the schedule of fees then currently used by Engineer.

17.4 *Claims Waiver*

Client and Engineer hereby waive all claims against each other for consequential damages (including, but not limited to, loss of use or lost profits).

## 17.  Disputes

All disputes between Engineer and Client shall be subject to non-binding mediation. Either party may demand mediation by serving a written notice stating the essential nature of the dispute, the amount of time or money claimed, and requiring that the matter be mediated within forty-five (45) days of service of notice. The mediation shall be administered by the American Arbitration Association in accordance with their most recent construction Mediation Rules, or by such other person or organization as the parties may agree upon.

No action or suit may be commenced unless the mediation did not occur within forty-five (45) days after service of notice, the mediation occurred but did not resolve the dispute, or a statute of limitation would elapse if suit was not filed prior to the forty-five (45) days after service of notice.

## 18.  Attorney Fees / Venue / Arbitration

Client and NTS agree that the laws of the State of California govern the construction and interpretation of this Agreement and any dispute between the parties, including without limitation, disputes arising out of or relating to this Agreement, the professional relationship between the parties, and the professional services rendered by NTS to Client shall be decided by Arbitration under the rules of the American Arbitration Association. Client further agrees that in the event of any dispute between NTS and Client, any action or proceeding shall be brought in Orange County, California and that California law shall apply. Client also agrees to submit to jurisdiction in California. In the event enforcement proceedings and/or legal action arises relating to this Agreement, the interpretation thereof, or the failure of any Party to perform the terms of Agreement, the prevailing party in such action shall be, in addition to damages, injunctive relief or any other relief, entitled to reasonable costs and expenses not limited to actual attorneys' fees and expert witness costs incurred in such an action.

## 19.  Integration and Severability

This Agreement reflects the entire agreement of the parties with respect to its terms and supersedes all prior agreements, whether written or oral. If any portion of this Agreement is found to be void or voidable, such portion shall be deemed stricken and the Agreement shall be reformed to as closely approximate the stricken portions as the law allows.

- - - - - - - - - - - - - - - - - - - - - -

**End of Terms and Conditions**





**LOWE'S**

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400
- SALE -
SALES#: FSTLANE4 13  TRANS#: 58407712 06-24-19

| | |
|---|---|
| 498410 FURNITURE DOLLY (-74633) | 22.98 |
| 191461 AE 20-IN COMBO VAC/WALL B | 16.98 |
| 773204 8-OZ 3-IN XTRABLUE CHLORI | 3.78 |
| 1262868 CLX SHOCK + 12-PACK (-649 | 39.87 |

| | |
|---|---|
| SUBTOTAL: | 83.61 |
| TAX: | 7.94 |
| INVOICE 07020  TOTAL: | 91.55 |
| MERCH/GIFT CARD: | 60.21 |
| CASH: | 40.00 |
| CHANGE: | 8.66 |

SWIPED MERCH/GIFT CARD 1924  AUTHCODE    0
BEGIN BAL    TRANSACTION AMT    ENDING BAL
60.21         60.21              0.00
STORE: 1510   TERMINAL: 07   06/24/19 13:21:52
# OF ITEMS PURCHASED:     4
EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS



THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH
**************************************
*    YOUR OPINIONS COUNT!            *
*    REGISTER FOR A CHANCE TO BE     *
*  ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY! *
*      IREGISTRESE EN EL SORTEO MENSUAL *
*  PARA SER UNO DE LOS CINCO GANADORES DE $1,000! *
*                                    *
* REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY *
*   WITHIN ONE WEEK AT: www.loves.com/survey *
*        Y O U R   I D #07020 1510 175 *
*                                    *
*    NO PURCHASE NECESSARY TO ENTER OR WIN. *
* VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
* OFFICIAL RULES & WINNERS AT: www.loves.com/survey *
**************************************
    STORE: 1510   TERMINAL: 07  06/24/19 13:21:52



**LOWE'S**

LOWE'S HOME CENTERS, LLC
26415 BOUQUET CANYON ROAD
SANTA CLARITA, CA 91350   (661) 297-1400
- SALE -
SALES#: FSTLANE1 2950499  TRANS#: 06-28-19

| | |
|---|---|
| 831502 50-GAL STACKABLE LATCHED | 17.54 |
| 2.0    6.28 | 13.76 |
| 831543 19-GAL STACKABLE LATCHED | |
| 2.0    6.88 | |
| 102977 4L PLASTIC CHEN THR DISP | 9.98 |
| 644746 CLX HY POOL CARE ASSISTAN | 12.98 |
| 773204 8-OZ 3-IN XTRABLUE CHLORI | 3.78 |
| 1262868 CLX HERBICIDE 08-OZ (-649 | 19.98 |
| 29.98   DISCOUNT EACH | -10.00 |
| 209868 XL NUMERIC ACID | 10.98 |
| 77509 XL LIQUID CHLORINE/2 X 1 | 13.72 |
| 2.0    6.86 | |
| 102974 AE 3-PC TELESCPR POLE 4-F | 20.98 |

| | |
|---|---|
| SUBTOTAL | 116.72 |
| TAX | 11.28 |
| INVOICE 10443  TOTAL | 130.00 |
| DEBIT | 130.00 |
| TOTAL DISCOUNT: | 10.00 |

DEBIT: XXXXXXXXXXXXXX MARKET/DEB 02 AUTHCD 017867
SWIPED REF ID:15101347458 06/28/19 21:11:04
TRACE 00112852
PURCHASE   CASH BACK   TOTAL DEBIT
130.00       0.00        130.00
STORE: 1510  TERMINAL: 10  06/28/19 21:11:27
# OF ITEMS PURCHASED:     12
EXCLUDES FEES, SERVICES AND SPECIAL ORDER ITEMS

THANK YOU FOR SHOPPING LOWE'S.
SEE REVERSE SIDE FOR RETURN POLICY.
STORE MANAGER: PAT COSLEY *NOW HIRING*

LOWE'S PRICE MATCH GUARANTEE
FOR MORE DETAILS, VISIT LOWES.COM/PRICEMATCH
**************************************
*    YOUR OPINIONS COUNT!            *
*    REGISTER FOR A CHANCE TO BE     *
*  ONE OF FIVE $1,000 WINNERS DRAWN MONTHLY! *
*      IREGISTRESE EN EL SORTEO MENSUAL *
*  PARA SER UNO DE LOS CINCO GANADORES DE $1,000! *
*                                    *
* REGISTER BY COMPLETING A GUEST SATISFACTION SURVEY *
*   WITHIN ONE WEEK AT: www.loves.com/survey *
*        Y O U R   I D #10443 1510 175 *
*                                    *
*    NO PURCHASE NECESSARY TO ENTER OR WIN. *
* VOID WHERE PROHIBITED. MUST BE 18 OR OLDER TO ENTER. *
* OFFICIAL RULES & WINNERS AT: www.loves.com/survey *
**************************************
    STORE: 1510   TERMINAL: 10  06/28/19 21:11

# INVOICE

Santa Clarita Handyman Service
32258 Indiana Avenue
Acton, California 93510

06/18/2019

INVOICE NO. 5401

*Payment terms: Cash upon completion)>*

**BILL TO**

Tina Williams
21444 Peggy Joyce Lane
Saugus, California 91350
661-312-1270

**SHIP TO**

N/A

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| | | | 0.00 |
| Removal of concrete blocks from hillside | | | 2000.00 |
| Senior/Disabled Discount 25% | | | -500.00 |
| Removal and Disposal of concrete blocks not included. | | | 0.00 |
| | | | 0.00 |
| | | | 0.00 |

Remarks / Payment Instructions: Payment Due Upon
Completion in Cash.

| | |
|---|---|
| SUBTOTAL | 2000.00 |
| DISCOUNT | 500.00 |
| Paid Cash . | 1500.00 |

**Balance Due** **$ 0.00**



**Handyman Service**

**INVOICE**

DATE:   June 17, 2019

Tina Williams
21444 Peggy Joyce Lane
Saugus, California 91350

661-312-1270

Collapsed wall debris removal & Haul Away

Collapsed wall partial concrete removal

Debris                         $200.00
Concrete                       $300.00

Total Due                      $500.00

Paid in Full – Paid Cash       ($500.00





**Horticultural & Arborist Experience**
**HORTICULTURAL MANAGEMENT, INC.** *Since 1978*

10168 Canoga Ave. ■ Chatsworth, CA 91311
CA Lic. #729478  Fully Insured  Workers Comp
(818) 895-5559 ■ (310) 514-9447 ■ (661) 253-1315
(805) 522-8733 ■ Fax (818) 920-7130
Web site www.achortico.com ■ E-mail achortico@aol.com



30301

## PROPOSAL

Name: TINA WILLIAMS

Address: 21444 PEGGY JOYCELANE

City: SAUGUS   Zip: 91350

DATE OF ORDER: 9.25.19   HOME TEL: 661-312-1270
ORDER TAKEN BY: TCC
E-mail: TWILLIAMS62@LIVE.com

| Qty | Item | Location | Job Description | Amount |
|-----|------|----------|-----------------|--------|
| — | SITE VISIT & PROVIDE REPORT | F B S | PERFORM SITE VISIT & PROVIDE | 600 |
| | | F B S | REPORT ON FINDINGS | |
| | | F B S | | |
| | | F B S | | |
| | | F B S | | |
| | | F B S | | |
| | | F B S | | |
| | | F B S | | |
| | | F B S | PAID IN CASH $600 °° 9-27-19 | |
| | | F B S | Tina Castillo | |
| | | Y  N | Haul Away Trimmings | |

Discount Code:

Total

We hereby propose to furnish labor and materials complete in accordance with the above specifications, for the
sum of $ _____ or as specified.

With payment to be made as follows: CHECK UPON APPROVAL/INSPECTION

All material is guaranteed to be as specified. All work is to be completed in a workmanlike manner according to standard practices. Any alterations or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Not responsible for damage to underground hazards, pipes, sprinkles, electrical lines, gas lines, sewer lines in stump grinding removal. Like factors, we warranty on treatments and spraying for pest and disease. Special offers, including but not limited to coupons, informational, and station discounts, may not be combined. Payment Terms are Due Upon Completion, or as noted above. A 1½ % finance Charge (8C) per month will be applied on all past due parcels. In the event this account needs to be assigned to collection agency or attorney, the customer is responsible for all attorneys' fees, collection fees, filing fees, finance charges, interest charges and any other cost incurred. There is 3.5% processing fee for credit card transactions.

Acceptance of Proposal - The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Authorized
Signature: _____

Note: This proposal may be withdrawn by us if not
accepted within   7   days.

Signature: _____

Date Accepted: _____

# EXHIBIT J



Katherine T. Botros
Admitted in CA
kbotros@rlattorneys.com

REPLY TO: ORANGE COUNTY OFFICE
9891 Irvine Center Dr., Suite 200
Irvine, CA 92618

May 18, 2021

**<u>VIA EMAIL ONLY</u>**
Mr. Arash Merpour
Merpour Law, Inc.
2006 E. Foothill Blvd.
Pasadena, CA 91107
arash@merpourlaw.com

Re:       Claim No.      :     LC5268E0C7
            Insured           :     Williams, Tina
            Insured Location    :     21444 Peggy Joyce Ln.
                                      Santa Clarita, CA 91350

Dear Mr. Merpour:

       In response to your recent correspondences for further information re payments issued by Lemonade Insurance Company ("Lemonade"). We reiterate again that the entirety of the Lemonade claims file in our possession relating to Ms. Williams' loss has been forwarded to you. This includes 522 pages of documents, detailing reports, photographs, and communications. From our review of the claims file, it appears that the total amount paid amounts to $38,858.38, subject to further investigation, as follows:

- $12,361.15     Payment under Other Structures – consisting of $1500 for clean up; $6300 pool equipment estimates, and $5,561.15 estimate repairs for 50% of block walls     Kindly reference bates LEMONADE000009, 000047-00049, 0000076-000087

- $797.00     Payments for Contents feature loss     Reference bates LEMONADE0000076-000087

- $12,638.85     Oth Structures     Reference bates LEMONADE0000076-000087

- 11,500.00     Oth Structures for Mortgage     Reference bates LEMONADE000076-000087

Mr. Arash Merpour
Merpour Law, Inc.
Re: Claim No. LC5268E0C7
May 18, 2021
Page:  2

---

- $697.88     Oth Structures – payment to Ryze     Reference bates
  Claims for investigation     LEMONADE000010-000051

- $617.00     Oth Structures – payments to G45S     Reference bates LEMONADE
  Compliance for investigation.     000055-000064

- $246.00     Oth Structures – payments to G45S     Reference bates
  Compliance     LEMONADE000055-000064

      Attached for your reference are the documents referenced above.   Note that while the Ryze and G45S reports were previously withheld pursuant to work product privileges and communication privileges, we are providing you a redaction version of the reports.

      Based on the Proof of Loss provided, please advise if you are demanding appraisal of the claim pursuant to the policy.  Lemonade continues its position to resolve any disputes informally and in good faith.   However, Lemonade continues to reserve all rights and defenses regarding this claim, including the right to deny or dispute coverage. No waiver or estoppel is intended, and none should be inferred.

      Please feel free to contact the undersigned should you wish to discuss further.

      Very Truly Yours,

      */s/ Katherine T. Botros*
      Katherine T. Botros
      FOR THE FIRM

KTB/

Encl. as noted



# EXHIBIT K

Collapse 🔒 (EDIT)     SETTLED    INC... 14 DAYS     ... Shelby L.    Admin
LC5268E0C7



**CLAIM DETAILS**   COMMS. TIMELINE   USER TIMELINE   SUBRO.   INSTANT CLAIMS LOG   CHAT LOG   RESERVE LOG   FEES LOG   SUBRO. LOG

| $13,361 | $0 | $1,000 | $12,361.15 |
|---|---|---|---|
| TOTAL CLAIMED | TOTAL RESERVED | DEDUCTIBLE APPLIED | TOTAL PAID |



**Tina Williams** 🇺🇸 CA
LP57346AC7 (ACTIVE)
HOMEOWNERS

📅 Effective from 03/01/2019
📱 (661) 312-1270
✉️ twilliams62@live.com

🏷️ (SUBROGATION) (EMERGENCY CLAIM) (MANUAL CLAIM)

POLICY PDF

f 🐦 📷 in ▶️ 📌

| **CLAIM LIFECYCLE** | POLICY EFFECTIVE | March 01, 2019 17:02:28 PST |
|---|---|---|
| | DATE OF LOSS | June 14, 2019 09:57:54 PDT |
| | CLAIM OPENED | June 14, 2019 10:07:34 PDT |
| | CLAIM SUBMITTED | June 14, 2019 10:07:39 PDT |
| | CLAIM SETTLED | June 28, 2019 13:49:34 PDT |
| | CLAIM CLOSED | June 30, 2019 18:04:16 PDT |
| | FIRST RESPONSE | July 28, 2019 03:54:56 PDT |

| **COVERAGE SUMMARY** | DWELLING | $350,000 |
|---|---|---|
| | OTHER STRUCTURE | $35,000 |
| | PERSONAL PROPERTY | $175,000 |
| | LOSS OF USE | $105,000 |
| | PERSONAL LIABILITY | $100,000 |
| | MEDICAL PAYMENTS TO OTHERS | $1,000 |
| | DEDUCTIBLE | $1,000 |

| **POLICY MEMBERS & STAKEHOLDERS** | MORTGAGEE | Select Portfolio Servicing, Inc |
|---|---|---|

**POLICY ADDRESS**

21444 Peggy Joyce Ln, Santa Clarita, CA, 91350

↑

# User Claims History

| 1 ($12,361.15) | 2 ($0) |
|---|---|
| LEMONADE | ISO |

| ID | DATE | CARRIER | POLICY ID | LOSS TYPE | MATCH | STATUS | AMOUNT |
|---|---|---|---|---|---|---|---|
| LC5268E0C7 | June 14, 2019 | Lemonade | LP57346AC7 | Collapse | - | Open | $12,761.15 |
| 928031946 1407 | July 29, 2014 | Fire Insurance Excha 928031946 | Water | Person, Address | Closed | $0 |

LEMONADE00076

## Features

Total: 1, Pending: 0, Open: 0, Closed: 1

**ADD FEATURE**

 **Other Structures** ( CLOSED ▼ )

**ADD ITEM**

| ⌄ | RESERVED | PAID | DEDUCTIBLE | TOTAL INCURRED |
|---|----------|------|------------|----------------|
| | $0 | $12,361.15 | $1,000 | $12,361.15 |

### LOSS ITEMS (3)

| ☐ | STATUS | TITLE | VALUE | DESCRIPTION | IMAGES |
|---|--------|-------|-------|-------------|--------|
| ☐ | Paid | Clean up and mitigation | $1,500 | Per invoice | |
| ☐ | Paid | Pool Equip | $6,300 | Per estimates | |
| ☐ | Paid | Block wall estimate | $5,561.15 | Based on xm8 estimate. | |

## Fees ⓘ

| Item | Complexity | Amount |
|------|-----------|--------|
| 🗑 Adjuster Fee | Medium | $160 |

## Payments

**ACTIONS ▼**

| | PAYEE | AMOUNT | COMPLETED AT | |
|---|-------|--------|--------------|---|
| ✓ | Tina Williams | $6,800 | 06/30/2019 18:04 PDT | ⌄ |
| ✓ | Tina Williams | $5,561.15 | 06/30/2019 18:03 PDT | ⌄ |

## Payees

**ACTIONS ▼**

| | TYPE | CATEGORY | NAME | LEMONADE00077 |
|---|------|----------|------|---------------|
| 😀 | INSURED | Insured | Tina Williams | |

 CONTRACTOR   Building Estimator          Ryze Claim Solutions, LLC

## Video Attachments

NO VIDEO IS ATTACHED TO THE CLAIM

## Attachments                                                        ADD

| | TYPE | DESCRIPTION | TAKEN AT | UPLOADED AT | LOCATION |
|---|---|---|---|---|---|
| | Policy PDF | Policy PDF | - | | - |
| | Coverage Letter | Partial Denial Letter | - | August 13th 2019 21:29:52 PDT | - |
| | Contractor Estimate | Foundation Tech Construction | - | August 8th 2019 14:46:02 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:21 PDT | August 7th 2019 16:54:39 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:46 PDT | August 7th 2019 16:54:39 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:46 PDT | August 7th 2019 16:54:38 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |

LEMONADE00078

| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:37 PDT | August 7th 2019 16:54:37 PDT | 21441 Carol Sue Ln, Santa Clarita, CA, 91350 |
|---|---|---|---|---|---|
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:33 PDT | August 7th 2019 16:54:37 PDT | 21441 Carol Sue Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:16 PDT | August 7th 2019 16:54:36 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:24 PDT | August 7th 2019 16:54:35 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:21 PDT | August 7th 2019 16:54:35 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:29 PDT | August 7th 2019 16:54:34 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:29 PDT | August 7th 2019 16:54:34 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | - | August 6th 2019 22:21:16 PDT | - |
| | Zendesk Attachment | Attachment from ticket 819935 | - | August 5th 2019 20:37:25 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | - | June 28th 2019 22:34:55 PDT | - |
| | Claim Details | Estimate | - | June 28th 2019 22:26:53 PDT | - |
| | Claim Details | Sat view 52 ft block wall. | - | June 28th 2019 21:47:01 PDT | - |
| | Claim Details | Ryze estimate only 4 -10pg | - | June 28th 2019 21:17:13 PDT | - |
| | Zendesk Attachment | Attachment from ticket 735259 | - | June 28th 2019 20:48:12 PDT | - |
| | Claim Details | RYZE Estimate. | - | June 28th 2019 20:44:26 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | - | June 28th 2019 18:50:22 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | June 28th 2019 11:16:02 PDT | June 28th 2019 18:41:29 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | June 27th 2019 13:08:41 PDT | June 28th 2019 18:41:28 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | - | June 28th 2019 18:41:28 PDT | - |
| | Zendesk Attachment | Attachment from ticket 731161 | - | June 27th 2019 00:27:08 PDT | - |
| | Zendesk Attachment | Attachment from ticket 731161 | - | June 27th 2019 00:27:08 PDT | - |
| | Zendesk Attachment | Attachment from ticket 731161 | - | June 27th 2019 00:27:08 PDT | - |

LEMONADE00079

| | Zendesk Attachment | Attachment from ticket 731161 | | 00:27:08 PDT | |
| | Zendesk Attachment | Attachment from ticket 705881 | - | June 24th 2019 21:38:44 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | June 18th 2019 11:13:08 PDT | June 18th 2019 20:32:28 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 705881 | - | June 18th 2019 20:16:10 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | - | June 17th 2019 21:35:10 PDT | - |

LEMONADE00080



**$53,749**
TOTAL CLAIMED

**-**
TOTAL RESERVED

**$1,000**
DEDUCTIBLE APPLIED

**$38,859.12**
TOTAL PAID

SUBROGATION   EMERGENCY CLAIM   MANUAL CLAIM

| CLAIM LIFECYCLE | | |
| --- | --- | --- |
| | POLICY EFFECTIVE | March 01, 2019 17:02:28 PST |
| | DATE OF LOSS | June 14, 2019 09:57:54 PDT |
| | CLAIM OPENED | June 14, 2019 10:07:34 PDT |
| | CLAIM SUBMITTED | June 14, 2019 10:07:39 PDT |
| | FIRST RESPONSE | June 14, 2019 14:26:14 PDT |
| | CLAIM CLOSED | October 27, 2019 17:50:59 PDT |

| COVERAGE SUMMARY | BASE LIMITS | |
| --- | --- | --- |
| | DWELLING | $350,000 |
| | OTHER STRUCTURE | $35,000 |
| | PERSONAL PROPERTY | $175,000 |
| | LOSS OF USE | $105,000 |
| | PERSONAL LIABILITY | $100,000 |
| | MEDICAL PAYMENTS TO OTHERS | $1,000 |
| | **DEDUCTIBLE** | |
| | DEDUCTIBLE | $1,000 |
| | **ADD ONS** | |
| | EXTENDED RECONSTRUCTION | $87,500 |
| | SWIMMING POOL LIABILITY | $100,000 |

| POLICY MEMBERS & STAKEHOLDERS | MORTGAGEE | Select Portfolio Servicing, Inc. |
| --- | --- | --- |

**POLICY ADDRESS**

21444 Peggy Joyce Ln, Santa Clarita, CA, 91350

**Tina Williams**
LP57346AC7   RENEWED
HOMEOWNERS
CA

Renewed on 03/01/2020
(661) 312-1270
twilliams42@live.com

POLICY PDF

## Claim History

**3** USER CLAIMS
($38,859.12)

**0** ADDRESS CLAIMS
($0.00)

**0** RISK NETWORK CLAIMS
($0.00)

Filter by:  All

| DATE OF LOSS | CLAIM ID | LOSS TYPE | STATUS | AMOUNT | |
| --- | --- | --- | --- | --- | --- |
| June 14, 2019 | LC5268E0C7 | Collapse | Open | $38,859.12 | ⌄ |
| July 29, 2014 (pending) | 928031946 140730 3 | Water | Closed | - | ⌄ |
| July 08, 2014 (pending) | 928031946 140709 3 | Water | Closed | - | ⌄ |

## Features
Total: 2, Pending: 0, Open: 0, Closed: 2

**Other Structures** CLOSED ▾
8 ITEMS

OTHER STRUCTURES LIMIT
$35,000

ADD ITEM

| | RESERVED | PAID | DEDUCTIBLE | TOTAL INCURRED |
| --- | --- | --- | --- | --- |
| ⌄ | $0 ⓘ | $38,061.38 | $1,000 | $38,061.38 |

LOSS ITEMS (5)

LEMONADE00081

| | STATUS | ITEM | DESCRIPTION | PRICE | ATTACHMENTS |
|---|---|---|---|---|---|
| | Paid | Clean up and mitigation | Per invoice | $1,500 | |
| | Paid | Pool Equip | Per estimates | $6,300 | |
| | Paid | Block wall estimate | Based on xmll estimate. | $5,561.15 | |
| | Paid | Policy Limit Payment up to $25k | Up to $25k in order to issue via ACH | $12,638.85 | |
| | Paid | Policy Limits w Mortgage Co | Plus additional $1500 incurred for debris removal | $11,500 | |

## EXPENSE ITEMS (3)

| | STATUS | ITEM | DESCRIPTION | PRICE | VENDOR | |
|---|---|---|---|---|---|---|
| | Paid | G4S | Invoice Number: 1340085 | $246.5 | G4S Compliance & Investigations Kelly Maxwell | ▾ |
| | Paid | G4S | Invoice Number: 1334002 | $617 | | |
| | Paid | Ryze | RYZE File 19-026615-1 | $697.88 | | |

### Contents (CLOSED ▾)
3 ITEMS

PERSONAL PROPERTY LIMIT  $175,000
EXTRA COVERAGE  -

ADD ITEM

| | RESERVED | PAID | DEDUCTIBLE | TOTAL INCURRED |
|---|---|---|---|---|
| ⌄ | $0 | $797.74 | - | $797.74 |

### LOSS ITEMS (3)

Export CSV ↗

| | STATUS | ITEM | CATEGORY | DESCRIPTION | PRICE | ATTACHMENTS | VERIFICATIONS | |
|---|---|---|---|---|---|---|---|---|
| | Rejected | Shipwreck Scene | - | See invoice | $5,852 | ❗ Missing | VALUE / OWNERSHIP | |
| | Paid | Shipwreck Accessories | - | See Invoices, includes sales tax | $797.74 | ❗ Missing | VALUE / OWNERSHIP | |
| | Rejected | Waterfall Scene | - | See estimates and invoices | $8,038.28 | ❗ Missing | VALUE / OWNERSHIP | |

### Fees ⓘ

| Item | Complexity | Amount |
|---|---|---|
| Adjuster Fee | High | $1,360.06 |

## Payments

ACTIONS ▾

| | PAYEE | AMOUNT | COMPLETED AT | |
|---|---|---|---|---|
| ✓ | Tina Williams | $6,800 | 06/30/2019 18:04 PDT | ⌄ |
| ✓ | Tina Williams | $5,561.15 | 06/30/2019 18:03 PDT | ⌄ |
| ✓ | G4S Compliance & Investigations | $617 | 10/07/2019 21:41 PDT | ⌄ |
| ✓ | Ryze Claim Solutions, LLC | $697.88 | 10/14/2019 22:40 PDT | ⌄ |

LEMONADE00082





## Attachments

| TYPE | DESCRIPTION | TAKEN AT | UPLOADED AT | LOCATION |
|------|-------------|----------|-------------|----------|
| Policy PDF | Policy PDF | - | | - |
| Attorney Correspondence | Rep letter 2 | - | December 29th 2020 16:36:58 PST | - |
| Attorney Correspondence | Rep letter 1 | - | December 29th 2020 16:36:58 PST | - |
| Vendor Invoice | Invoice Number: 1340085 | - | October 25th 2019 13:14:07 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | October 3rd 2019 09:55:01 PDT | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | August 7th 2019 13:07:24 PDT | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |
| Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 22:03:46 PDT | - |



LEMONADE00084

| | Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 21:37:40 PDT | - |
|---|---|---|---|---|---|
| | Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 21:37:40 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | June 14th 2019 10:46:41 PDT | October 21st 2019 21:37:40 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 21:37:40 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | October 21st 2019 21:37:33 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | October 3rd 2019 09:55:01 PDT | October 21st 2019 21:37:13 PDT | - |
| | Vendor Invoice | RYZE File 19-026615-1 | - | October 14th 2019 19:55:34 PDT | - |
| | Adjuster Estimate | G4S Report | - | October 8th 2019 20:17:38 PDT | - |
| | Recording | Recorded Statement | - | October 8th 2019 20:17:37 PDT | - |
| | Adjuster Estimate | G4S Report | - | October 8th 2019 20:17:37 PDT | - |
| | Vendor Invoice | Invoice Number: 1334002 | - | October 7th 2019 20:30:38 PDT | - |
| | Other | Reservation of Rights | - | September 3rd 2019 22:38:12 PDT | - |
| | Claim Details | Comms Details Pg - Updated | - | August 27th 2019 22:50:31 PDT | - |
| | Claim Details | Claims Details Pg - Updated | - | August 27th 2019 22:50:31 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Zendesk Attachment | Attachment from Zendesk | - | August 27th 2019 22:30:09 PDT | - |
| | Coverage Letter | Partial Denial Letter | - | August 13th 2019 21:29:52 PDT | - |
| | Contractor Estimate | Foundation Tech Construction | - | August 8th 2019 14:46:02 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |

LEMONADE00085

| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
|---|---|---|---|---|---|
| | Zendesk Attachment | Attachment from ticket 830061 | - | August 8th 2019 14:20:35 PDT | - |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:21 PDT | August 7th 2019 16:54:39 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:46 PDT | August 7th 2019 16:54:39 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:46 PDT | August 7th 2019 16:54:38 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:37 PDT | August 7th 2019 16:54:37 PDT | 21441 Carol Sue Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:33 PDT | August 7th 2019 16:54:37 PDT | 21441 Carol Sue Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:16 PDT | August 7th 2019 16:54:36 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:25:24 PDT | August 7th 2019 16:54:35 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:21 PDT | August 7th 2019 16:54:35 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:29 PDT | August 7th 2019 16:54:34 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | August 3rd 2019 09:27:29 PDT | August 7th 2019 16:54:34 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| | Zendesk Attachment | Attachment from ticket 819935 | - | August 6th 2019 22:21:16 PDT | - |
| | Zendesk Attachment | Attachment from ticket 819935 | - | August 5th 2019 20:37:25 PDT | - |
| | Zendesk Attachment | Attachment from ticket 705881 | - | June 28th 2019 22:34:55 PDT | - |
| | Claim Details | Estimate | - | June 28th 2019 22:26:53 PDT | - |

| | | | | |
|---|---|---|---|---|
| Claim Details | Sat view 52 ft block wall.<br>Ryze estimate only<br>4 -10pg | - | June 28th 2019<br>21:47:01 PDT<br>June 28th 2019<br>21:17:13 PDT | - |
| Zendesk Attachment | Attachment from ticket 735259 | - | June 28th 2019<br>20:48:12 PDT | - |
| Claim Details | RYZE Estimate. | - | June 28th 2019<br>20:44:26 PDT | - |
| Zendesk Attachment | Attachment from ticket 705881 | - | June 28th 2019<br>18:50:22 PDT | - |
| Zendesk Attachment | Attachment from ticket 705881 | June 28th 2019<br>11:16:02 PDT | June 28th 2019<br>18:41:29 PDT | - |
| Zendesk Attachment | Attachment from ticket 705881 | June 27th 2019<br>13:08:41 PDT | June 28th 2019<br>18:41:28 PDT | - |
| Zendesk Attachment | Attachment from ticket 705881 | - | June 28th 2019<br>18:41:28 PDT | - |
| Zendesk Attachment | Attachment from ticket 731161 | - | June 27th 2019<br>00:27:08 PDT | - |
| Zendesk Attachment | Attachment from ticket 731161 | - | June 27th 2019<br>00:27:08 PDT | - |
| Zendesk Attachment | Attachment from ticket 731161 | - | June 27th 2019<br>00:27:08 PDT | - |
| Zendesk Attachment | Attachment from ticket 731161 | - | June 27th 2019<br>00:27:08 PDT | - |
| Zendesk Attachment | Attachment from ticket 705881 | - | June 24th 2019<br>21:38:44 PDT | - |
| Zendesk Attachment | Attachment from ticket 705881 | June 18th 2019<br>11:13:08 PDT | June 18th 2019<br>20:32:28 PDT | 21444 Peggy Joyce Ln, Santa Clarita, CA, 91350 |
| Zendesk Attachment | Attachment from ticket 705881 | - | June 18th 2019<br>20:16:10 PDT | - |
| Zendesk Attachment | Attachment from ticket 705881 | - | June 17th 2019<br>21:35:10 PDT | - |

LEMONADE00087

# EXHIBIT L

<u>Merpour Law, Inc.</u>

Arash Merpour, Esq.                    2006 East Foothill Blvd
                                       Pasadena, CA 91107
                                       (805) 222 - 6738

June 10, 2021

**<u>EMAIL ONLY</u>**

Katherine T. Botros
Resnick & Louis, P.C.
Kbottros@rlattorneys.com

**<u>Re:      Williams, Tina – LC5268E0C7  – Denial of proof of loss</u>**

Dear Ms. Botros,

     I received your denial letter of the proof of loss on May 18, 2021.  It's interesting that you now decided to release more of the case file with the letter.  These documents should have been provided when we first requested the case file.  You are not even providing me with the recording of the interview referenced in your documents.  I keep on referencing everything that is missing with this case file, yet you insist that it is complete.


Regards,

*Arash Merpour*

Arash Merpour, Esq.
**Merpour Law, Inc.**
805.222.6738
arash@merpourlaw.com

Exhibit 2

Electronically FILED by Superior Court of California, County of Los Angeles on 11/03/2021 10:36 AM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Reyna,Deputy Clerk

Case 2:21-cv-09003-DSF-JPR   Document 1   Filed 11/17/21   Page 140 of 142   Page ID #:140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State, Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| **Merpour Law, Inc.**<br>**2006 East Foothill Boulevard**<br>**Pasadena, CA 91107**<br>TELEPHONE NO.: **805-259-6808**    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* **TINA WILLIAMS** | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: **9425 Penfield Avenue, Room 1200**
MAILING ADDRESS: **9425 Penfield Avenue, Room 1200**
CITY AND ZIP CODE: **Chatsworth 91311**
BRANCH NAME: **North Valley District, Chatsworth Courthouse**

| PLAINTIFF/PETITIONER: **TINA WILLIAMS** | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: **LEMONADE INSURANCE AGENCY LLC** | **21CHCV00454** |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>**REF-8976146** |
|---|---|

**BY FAX**

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of *(specify documents):*
    **SUMMONS; COMPLAINT; NOTICE OF CASE ASSIGNMENT; CMC**

3.  a.  Party served *(specify name of party as shown on documents served):*
        **Lemonade Insurance Agency, LLC**

    b.  **[X]**  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b whom substituted service was made) *(specify name and relationship to the party named in item 3a ):*
        **John Halissy, Registered Agent**

4.  Address where the party was served:
    **608 University Avenue, Sacramento, CA 95825**

5.  I served the party *(check proper box)*

    a.  **[X]**  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **11/02/2021** at *(time):* **4:10 PM**

    b.  **[ ]**  **by substituted service.** On *(date):*           at *(time):*           I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1)  **[ ]**  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2)  **[ ]**  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3)  **[ ]**  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4)  **[ ]**  I thereafter caused to be mailed (by first class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc § 415.20). Documents were mailed on *(date):*          from *(city):*          **or** [ ] a declaration of mailing is attached.

        (5)  **[ ]**  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

---

Form Adopted for Mandatory Use
Judicial Council of California POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure. § 417.10
Tracking #: **0078702724**


REF: **REF-8976146**




| PLAINTIFF/PETITIONER: TINA WILLIAMS | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  LEMONADE INSURANCE AGENCY LLC | 21CHCV00454 |

c. ☐ **by mail and acknowledgement of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*          (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify)*  **Lemonade Insurance Agency, LLC c/o John Halissy, Registered Agent**

    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)        ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)           ☐ 415.46 (occupant)

                          ☐ other:

7. **Person who served papers**

a. Name:          **Sean Mason**

b. Address:        **P.O. Box 1642, Carmichael, CA 95609**

c. Telephone number:  **619-884-2893**

d. The fee for service was: **$ 75.00**

e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ registered California process server:

        (i) ☐ owner ☐ employee ☒ independent contractor.  For:    **ABC Legal Services, LLC**

        (ii) ☒ Registration No.:  **2018-10**      Registration #:  **6779**

        (iii) ☒ County:    **Sacramento**      County:    **Los Angeles**

**BY FAX**

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and I certify** that the foregoing is true and correct.

Date:  11/02/2021

           **Sean Mason**                     *Sean Mason*

  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)           (SIGNATURE)

REF: **REF-8976146**                                 Tracking #: 0078702724

PROOF OF SERVICE

I, William Reeves, declare that:

I am over the age of eighteen years and not a party to the within cause.

On the date specified below, I served the following document:

NOTICE OF REMOVAL

Service was effectuated in the following manner:

\_\_\_\_\_      BY FACSIMILE:

XXXX      BY ELECTRONIC MAIL given the COVID-19 protocols.

XXXX      BY MAIL: By placing a true copy thereof enclosed in a sealed envelope addressed

Arash Merpour
Merpour Law
2006 E. Foothill Blvd.
Pasadena, CA 91107

I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice, mail is deposited with pre-paid postage with the United States Postal Service in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 17, 2021

_____
William Reeves

PROOF